IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1849, IN THE THIRTY-
FOURTH YEAR OF THE STATE.

---

## DOE, on the Demise of COOPER *v.* HARTER.

A recognizance cannot be impeached collaterally for the want of incapacity
occasioned by drunkenness of the person by whom it was acknowledged.

An execution issued after the year without revival, cannot, upon that
ground alone, be avoided in a collateral suit, by one who was not a party
to it.

On a judgment against several joint defendants, an execution may issue
without an affidavit indorsed thereon, that the defendants have not suffi-
cient property in the county in which they reside to satisfy said judg-
ment, to any county in which any one of the defendants may reside.

ERROR to the *Wabash* Circuit Court.

SMITH, J.—This was an action of ejectment, commenced
in the *Wabash* Circuit on the 18th of *August*, 1846. The
land in controversy contains three tracts, one containing
64 acres and two containing 40 acres each, situated in the
county of *Wabash*. *Samuel Harter* was admitted to defend
upon filing the usual consent rule and plea. The cause
was tried by a jury, who found for the defendant. A mo-
tion for a new trial was overruled, and judgment was
rendered upon the verdict.

*Monday,*
*November* 26.

The evidence adduced in the trial is set out in a bill of exceptions. The plaintiff produced the record of three judgments, all rendered by the *Huntington* Circuit Court on the 20th of *March*, 1838; one in favor of the plaintiff for 194 dollars and 21 cents; one in favor of *Willis* and *Brothers* for 487 dollars and 93 cents; and one in favor of *N. Norton* and *Co.*, for 734 dollars and 45 cents; and all of them against *Gridley* and *Brenamen*. The records themselves also show that *John Harter* and *E. F. Glover* entered themselves replevin-bail for the stay of execution on each of the above judgments on the 13th of *April*, 1838; and that, at the *March* term of said Circuit Court, in 1846, on motion of the plaintiff's attorney, it was ordered that certain affidavits, made and filed on the 2d of *January*, 1845, for the purpose of procuring executions to be issued by the clerk to the sheriff of *Wabash* county, but which the clerk had failed to indorse on the executions, should be indorsed *nunc pro tunc*.

The plaintiff then introduced three executions which had been issued on said judgments respectively, dated the 2d of *January*, 1845. They were directed to the sheriff of *Wabash* county and had been returned by such sheriff. It appears by the returns that they had all been levied upon the land in controversy as the property of *John Harter*, and that after advertisement, &c., said land was sold to the lessor of the plaintiff for the aggregate sum of 250 dollars.

Upon each of the executions there was indorsed an affidavit, made by the plaintiff's attorney before the clerk, to procure the issuing of such executions to the effect that said *Gridley* was a resident of the county of *Carroll*, and said *Brenamen*, of the county of ———, in this state, and that said defendant had not, nor had either of them, sufficient property in the counties wherein they resided, to satisfy the judgments upon which the executions issued. These affidavits were not indorsed upon the executions at the time the sheriff's sales were made, but appear to have been afterwards indorsed *nunc pro tunc* according to the order of the Court before mentioned.

The plaintiff then introduced two deeds by the sheriff <span>Nov. Term,</span>
of *Wabash* county, conveying the lands in controversy to <span>1849.</span>
him by virtue of the sales under said executions.

The defendant objected to each of these executions and
deeds, but they were permitted to be given in evidence.

<span>DOE</span>
<span>v.</span>
<span>HARTER.</span>

The defendant then offered a deed for the premises in
controversy made to him by *John Harter*, and dated the
31st of *December*, 1838. He then proved, by the attest-
ing witnesses to this deed, that *Samuel Harter*, at the time
it was made, lived in *Tippecanoe* county, but soon after
moved into *Wabash* county, and afterwards into *Hunting-
ton* county; and that *John Harter* lived on the premises in
dispute a part of the time while *Samuel Harter* lived in
*Wabash* county. He also proved that the premises were
worth about 1,200 dollars.

The defendant then introduced *John Harter* as a wit-
ness, after executing to him a release of his covenants of
warranty. *John Harter* testified that he had no know-
ledge or recollection of entering himself replevin-bail—
that *Gridley*, one of the judgment-defendants, took him to
the clerk's office and requested him to enter such bail,
but he refused, and that *Gridley* then took him to a tavern
and made him very drunk; that he never entered into the
recognizance at any other time, and that if he had not
entered into it when he was wholly drunk, he would have
remembered doing so.

The plaintiff then proved by one *Boon* that the defend-
ant came upon the premises in controversy in the spring
of 1839, and occupied them in conjunction with *John Har-
ter* eighteen months, and that *John Harter* had continued
to occupy the same until the winter of 1845-6. He also
offered some other testimony for the purpose of showing
that the deed from *John* to *Samuel Harter* was fraudulent,
and made for the purpose of securing the property from
liability to execution upon the aforesaid judgments.

After the evidence was closed, the Court gave the fol-
lowing instructions to the jury:

"If the jury find that the deeds of the parties are both

*bona fide* and good, the oldest deed in point of date is the best, provided it was duly recorded.

"If the jury are satisfied that the deed of Harter is fraudulent it is void. If the possession did not pass from *John* to *Samuel Harter* of the land conveyed, and *John* had retained possession since the sale, as he did before, and there is no evidence of the payment of the purchase-money, it is evidence going to show that the conveyance was fraudulent.

"If, at the time that *John Harter* entered into the recognizance before the clerk of the *Huntington* Circuit Court by which he became liable for the judgments on which *Cooper* founds his deeds, *John Harter* was, by drunkenness, absolutely and entirely deprived of his understanding, that act is null and void."

We think the last instruction was calculated to mislead the jury. Although, it is, no doubt, true, that a person who has been made a party to an agreement when in a state of complete mental incapacity, produced by drunkenness, may resist any attempt to enforce the contract, yet, if instead of doing so when he becomes sober, he acquiesces in it or ratifies it, it will be valid and binding upon him. Powell on Con. 30.—Story on Con. 13.—Add. on Con. 873. Such contracts are not absolutely and necessarily void *ab initio;* but are voidable, or may be declared void, at the instance of the parties interested. If, therefore, the entry of replevin-bail in this case stood upon the same footing with ordinary contracts, it could not be thus avoided by a third person, no steps having been taken by the party who made the entry to have it annulled or set aside. But the statute gives it the same force and effect as a judgment confessed in a Court of Record, and it stands upon higher ground than if it had been an agreement *in pais*. It is to be inferred that the judges, or other proper officers of the Court, would not have permitted a recognizance to be entered by a person absolutely deprived of his understanding by drunkenness. If, by any means, a recognizance entered into by a per-

son in such condition should get upon the records of a Court, it would, no doubt, be set aside on proper proceedings for that purpose; but, while standing in full force, a recognizance cannot be impeached collaterally for the want of capacity of the person by whom it was acknowledged. See 5 Bac. Abr. 25, Bouvier's Am. ed.

But it is contended that the executions under which the premises sold were were illegal and void, and that, therefore, the plaintiff was not, in any event, entitled to a verdict.

The first objection made to the executions is, that they bear date nearly seven years after the rendition of the judgment, and there does not appear to have been any revival of the judgments by *scire facias*. At common law if, after judgment rendered or recognizance acknowledged, the plaintiff sued out no execution within a year, he was driven to his original upon the judgments. The writ of *sci. fa.* in such cases was given by the statute of Westm. 2, 13 ed., 1 pt., 1 c. 45. But it has been uniformly held, both in *England* and in this country, that when execution is taken out after the year and a day without a revival, it is not void, but voidable only at the instance of the party against whom it issued, and that, until set aside, it is a justification for the party acting under it. 3 Lev. 404.—Salk. 273.—8 John. Rep. 331.—13 id. 537.—15 id. 169.—16 id. 537.—2 Serg. & Rawle, 426.—17 id. 327.—4 Watts, 373.—3 Rawle, 273. In the case of *Irwin's Lessee* v. *Dundas*, 4 Howard's U. S. R. 58, the validity of an execution, issued after the death of the defendant in the judgment, without revival, came in question, and it was held that such execution was void; but for reasons different and distinct from those governing the decisions in the cases where execution had not been taken out within the year, as above quoted, in which case an execution without revival is said to be regarded simply as an irregularity which it is competent for the party defendant to waive. The rule is said to be that erroneous executions are voidable when there is a party in Court to avoid them; but when there is no such party, as after the death of the judgment-defendant, they are

void. But whatever may be the ground for the distinction, it appears to be well settled that an execution issued after the year, without revival, cannot, upon that ground alone, be avoided in a collateral suit by one who was not a party to it.

Another objection made to the executions is, that they issued from the *Huntington* Circuit Court to the sheriff of *Wabash* county, without having indorsed upon them the affidavits required by the statute. In order to inquire into the force of this objection it is necessary to examine the statutory provisions regulating the issuing of executions in such cases.

By section 357 R. S. p. 738, execution upon a judgment stayed by the entry of a recognizance of replevin-bail must issue jointly against all the parties thereto, but any levy by virtue thereof is required to be first made on the property of the defendant in the original judgment.

Section 373, of the same chapter, provides that execution against the property of any party may be directed to the sheriff or other proper officer of any county in this State.

Section 478 provides, that no execution against the property of an execution-defendant shall be issued by any clerk of a Circuit or Probate Court, to any officer, except of the county in which the *judgment or decree was rendered* on which execution is to issue, unless the execution-plaintiff, his agent or attorney, will make and file an affidavit with such clerk, stating that none of the execution-defendants, in such case has any goods and chattels, lands and tenements, in the county in which such judgment or decree was rendered subject to an execution.

This last section is, however, modified by the 13th section of the act relative to executions, approved *February* 11th, 1843, R. S. 1,047, which is as follows:

"No execution shall issue on any judgment, order or decree, entered by any Circuit or Probate Court of this State directed to any other sheriff than the sheriff of the county in which said defendant actually resides, unless the plaintiff or his attorney will make an affidavit before

Nov. Term,
1849.

Doe
v.
Harter.

the clerk of the Court at which said judgment was rendered, that said defendant has not sufficient property, deducting incumbrances, in the county in which he resides to satisfy said judgment, order, or decree, then and in that case the clerk of the proper Circuit Court, may issue an execution to any other county in this state, and in that case the clerk shall indorse on the back of the execution such affidavit, otherwise it shall be void."

We must construe this section, taken in connection with the other provisions of the statute, to mean that an execution may issue without such affidavits indorsed upon it, to any county in which any one of the execution-defendants resides. Otherwise, where, as in this case, there are several defendants who may be residing in different counties, as the execution must be issued jointly against them all, there might be instances in which it would be impracticable to issue an execution in conformity with a strictly literal interpretation of this statute.

The statute declares in express terms that when such an affidavit is necessary, it shall be indorsed upon the execution, and that otherwise the execution shall be void. It is unnecessary, however, to inquire whether the neglect to make such an indorsement could be remedied by one made *nunc pro tunc* by order of the Court, after service of the writ, as it is proved, in this case, by one of the witnesses, *Boon*, that *John Harter* against whom, as one of the defendants, the executions issued was actually a resident of *Wabash* county at the time of their date. An affidavit such as is required by the 13th section of the act of *February* 11th, 1843, was, therefore, unnecessary, and the objections on that score are untenable.

*Per Curiam.*—The judgment is reversed. Cause remanded for a new trial.

*H. Cooper*, for the plaintiff.

*D. D. Pratt*, for the defendant.