Martindale v. Palmer.

---

## MARTINDALE v. PALMER.

CITY.—*Ordinance:*—*Signature of Mayor.*—*Street Improvement.*—The signature of the mayor of a city incorporated under the general law for the incorporation of cities in this State is not essential to the validity of an ordinance of such city, and, therefore, the fact that an ordinance of such city, under which a street improvement has been made, had not been signed by the mayor at the time the contract for the making of such improvement was let, does not render invalid an assessment against property for such improvement.

SAME.—*Ordinance.*—An ordinance of a city providing for a street improvement is not rendered void for uncertainty by the fact that it is necessary to take together the title and the body of the ordinance referring to the title, to ascertain with certainty what street or part of a street is to be improved.

SAME.—*Ordinance.*—*Contract.*—*Kind of Improvement.*—An ordinance providing for a street improvement in a city directed that the street should be paved with "Nicholson or wooden block pavement," and the contract was for "what is known as wooden block pavement."

*Held*, that it was not necessary that the contract should literally follow the ordinance, it being sufficient that the pavement contracted for corresponded in kind with that provided for in the ordinance.

SAME.—*Appeal from Precept.—Advertisement.*—On an appeal from a precept issued to collect the amount of an assessment against property for a street improvement, the insufficiency of the advertisement to receive proposals to do the work cannot be inquired into as a fact.

SAME.—*Precept.—Sale of Several Lots Together.*—A precept was issued, upon regular affidavits, for the collection of a certain sum in gross, being the amount of assessments properly made on two lots in a city, owned by one person, for a street improvement, and in default of payment the precept commanded the sale of both lots, without distinguishing the separate amounts due on each lot, and without requiring each lot to be sold separately to pay its own assessment.

*Held*, on appeal from the precept, that it was not void, but only voidable, and could have been amended by the assessments and affidavits, and that a sale of both lots thereunder without objection would have been good.

SAME.—*Appeal from Precept.—Answer.—Nul Tiel Record.*—On an appeal from a precept issued on an assessment for a street improvement, an answer of *nul tiel record* cannot put in issue any fact which preceded the contract.

PRACTICE.—*Setting Aside Judgment and Finding, and Making Another Finding, Without Motion.*—Upon the trial of a cause by the court, there was a general finding for the defendant, and final judgment for costs was rendered against the plaintiff, and several days afterwards the court, without request from either party to make a special finding before made, without any motion for a new trial, and without any written motion made in the cause, set aside said judgment and general finding, and, over the objection of the defendant, without hearing evidence or having a new trial, made a special finding in favor of the plaintiff.

*Held*, that such a practice could not be sustained.

From the Marion Civil Circuit Court.

*J. T. Dye* and *A. C. Harris*, for appellant.

*C. P. Jacobs*, for appellee.

BIDDLE, J.—Appeal from a precept issued by the mayor of the city of Indianapolis to collect the amount of certain assessments against the property of the appellant for street improvements. Proceedings were had, and a final decree rendered ordering the sale of the property to pay the assessments. We do not notice all the proceedings in detail, but only such as were excepted to by the appellant, and are insisted upon in his brief as erroneous.

1. It is urged that the ordinance under which the improvements were made was not in force at the time the contract

was let, because it had not been signed by the mayor. This question is presented by the second paragraph of the answer and also by the offer to prove the fact at the trial. The court held, on demurrer, as well as at the trial, that it was not necessary to the validity of the ordinance that it should be signed by the mayor. Section 78 of the statute under which the city of Indianapolis, as a municipal corporation, is organized, provides, that "all by-laws and ordinances shall, within a reasonable time after their passage, be recorded in a book kept for that purpose, and shall be signed by the presiding officer of the city, and attested by the clerk. On the passage or adoption of any by-laws, ordinances, or resolution, the yeas and nays shall be taken and entered on the record." The act nowhere requires the signature of the mayor to give validity to an ordinance.

The doctrine of the English courts as to the old corporations in that country, that the mayor was an integral part of the corporation, and that the acts of the corporation in his absence were invalid, has, it is believed, no application to the office of mayor in this country. With us, the powers and duties of the mayor depend entirely upon the provisions of the charter, or the act under which the corporation is organized, and the by-laws passed in pursuance of such authority. Properly and primarily, the powers and duties of a mayor are executive and administrative, and not judicial or legislative; but other powers may be, and often are, granted to him, and other duties enjoined upon him. Whether the mayor's signature is essential to the validity of an ordinance depends upon the charter, or the act authorizing the organization of the corporation, but, unless it is made essential, it has generally been held merely directory. The mayor, or presiding officer of the city of Indianapolis, by the section cited, is required to sign all ordinances recorded in a book kept for that purpose, *within a reasonable time after their passage.* This would seem to imply that his signature is not essential to the *passage* of an ordinance; if it were so, it would be useless to sign it again

after it was recorded, as the record must necessarily show the signature as having been made before the ordinance was recorded. Besides, the latter part of the section strongly implies that the validity of the passage or adoption of an ordinance depends upon the yeas and nays, taken and entered on the record, without the signature of the mayor. We are therefore conducted to the conclusion that the signature of the mayor, or presiding officer of the city of Indianapolis, is not essential to the validity of an ordinance properly passed by the corporation, however necessary it may be to the authentication of an ordinance in its book of records. And we think the following authorities fully consider and sustain the above views:

*Elmendorf* v. *The Mayor, etc., of New York,* 25 Wend. 693; *Miles* v. *Bough,* 3 Gale & D. 119; *Striker* v. *Kelly,* 7 Hill, 9; *Conboy* v. *Iowa City,* 2 Iowa, 90; *The State* v. *The Mayor, etc.,* 1 Dutcher, 399; *The San Francisco Gas Co.* v. *The City, etc.,* 6 Cal. 190; *Blanchard* v. *Bissell,* 11 Ohio St. 96; *Kepner* v. *The Commonwealth,* 40 Penn. St. 124; *Creighton* v. *Manson,* 27 Cal. 613; *Taylor* v. *Palmer,* 31 Cal. 240; 1 Dillon on Municipal Corp., sections 147, 209, 265, 266; *The Board, etc.,* v. *Silvers,* 22 Ind. 491; *Hellenkamp* v. *The City of Lafayette,* 30 Ind. 192; *Balfe* v. *Johnson,* 40 Ind. 235; *Brookbank* v. *The City of Jeffersonville,* 41 Ind. 406.

2. The appellant insists that the ordinance is void for uncertainty, because it does not declare what street was to be improved, nor what part of any street. The title of the ordinance is as follows:

"An ordinance to provide for grading and paving with wooden block pavement Market street, between Pennsylvania and Delaware streets."

It then ordains as follows:

"Section 1. Be it ordained by the Common Council of the city of Indianapolis that the above named street, between the points named, be properly graded according to the stakes set by the chief engineer, and that the same be paved with

the Nicholson or wooden block pavement, and that the expense," etc.

Taking the title and the ordinance together, we think there is no uncertainty as to what street, or part of a street, was to be graded and paved. That which can be made certain is certain. The same principle, as applicable to grades of certain streets, was settled in *Burr* v. *The Town of Newcastle*, 49 Ind. 322.

3. It is claimed by the appellant that the street under the ordinance could be improved only with a "Nicholson or wooden block pavement," and as the contract was for "what is known as wooden block pavement," that he is, therefore, not liable.

The petition to the council, signed by the appellant and others, was for "what is known as wooden block pavement;" the title of the ordinance, as we have seen, was "an ordinance to provide for grading and paving with wooden block pavement;" the body of the ordinance described it as the "Nicholson or wooden block pavement;" the notice to contractors for proposals was for "paving with wooden block pavement;" the contract, as stated, was for "what is known as wooden block pavement;" and the work was done with "wooden block pavement (Ballard's patent)." These several kinds of pavement belong to the same class. The council was not bound to literally follow the petition or the ordinance. It was sufficient if they corresponded in kind. Of course, they could not authorize the construction of a stone pavement, and then put in wooden pavement; but when they authorize the construction of a "wooden block pavement," the difference between Nicholson's and Ballard's patents is not material.

The case of *The State* v. *The Mayor and Common Council of the City of Hudson*, 5 Dutcher, 104, was brought to set aside an ordinance passed by the common council of the city of Hudson for regulating and grading Palisade Avenue, and to set aside the assessments made under its authority. In

these two points the case was the same as the one we are considering.

The remarks of OGDEN, J., in delivering the opinion of the court, are so apt and practical, in the application of the law to the affairs of men, that we adopt them as our own. He says:

"The object of an advertisement was the giving of information that an improvement was asked for, which would affect the interests of the owners of real estate that would be benefited by the same, so that they could appear before the council, or its committee, and make objections or suggestions. It would be an unfair interpretation of the intent of the legislature to say that the petitioners for improvements, in opening, and in grading and paving streets, can confine the common council to the particular manner of improvement which they may choose to ask for. If such is a fair construction of the section, and several combinations of property holders should present to the council their separate applications for the improvement of a street from one given point to another, but each naming a particular and distinct mode of improvement, the common council could not act, because they could not adopt each plan, and thus all improvement could be prevented. The proposition should be for some class or classes of improvement, which must be advertised; but the mode in which the improvement shall be made, and its extent, should be left to the discretion of the common council; therefore the fact that some of the petitions asked for plank sidewalks of a given width and description, and others did not, cannot invalidate the last general ordinance, which provides for the laying of sidewalks on both sides of the avenue."

The authorities cited by appellant, 2 Dillon Mun. Corp., secs. 60, 603, 618, and notes, go to show that a common council cannot delegate their official powers to other persons, but not to the latitude of discretion they have in the exercise of their powers themselves. In this, we think, the authorities are not in point.

The appellant also complains because the court held the

fifth paragraph of answer, setting up the facts urged under this head, good on demurrer, and afterwards, when the facts were proved on trial, regarded them as an insufficient defence.

We have examined the fifth paragraph carefully, and consider it insufficient; but holding it to be good by the court is not an error of which the appellant, who pleaded it, can complain; nor is it an error for which the judgment should be reversed, if it is right upon the whole record.

4. To the first transcript filed by the appellee, on appeal, a demurrer was sustained. He afterwards filed an amended transcript, to which a motion to strike out was overruled. The appellant does not deny but that a record may be amended while the case is pending, but insists that the proper practice is to have the omitted parts attached to the record on file; and he admits that "this is only a technical point," and virtually abandons it, and we think very sensibly.

A demurrer was also overruled to the amended transcript. There is no error in this ruling. The transcript is sufficient. On trial, the appellant objected to the admission of the transcript as evidence. " The court said, so much of the record as was before the contract required no proof, and was of itself to be taken without proof, and was in the case, and the remainder incompetent evidence." What part of the transcript was held unnecessary, and what part incompetent, are not made to appear; and what point the appellant has raised, when his own objection was sustained in full, we do not perceive.

Under this head, the appellant also discusses the insufficiency of the advertisement to receive proposals to do the work. This cannot be inquired into as a fact, as the statute expressly provides, "that no question of fact shall be tried which may arise prior to the making of the contract for the said improvement under the order of the council." Sec. 71, 3 Ind. Stat. 102; *The City of Indianapolis* v. *Imberry*, 17 Ind. 175.

· 5. The assessment on lot nine was for four hundred and sixty-four dollars and forty cents; on lot eight, for three hundred and nine dollars and sixty cents. The precept issued for seven hundred and seventy-four dollars, the sum in gross, and, in default of payment, commanded the sale of both lots, without distinguishing the separate amounts due on each lot, and without requiring each lot to be sold separately to pay its own assessment. The court found the assessments properly made, and the affidavits authorizing the precept regular, but held the precept "irregular, illegal and void." We do not think the precept was void, but only voidable. If it was void, no appeal from it would lie. It seems to us that a sale under it, without objection, would have been good. The case of *Balfe* v. *Johnson*, 40 Ind. 235, cited by the appellant, does not declare such a precept void, but decides that the assessments must be made upon each separate lot, or piece of ground, as was done in the present case. We think the precept in this case could have been amended by the assessments and affidavits. The affidavits authorize the precept as a judgment authorizes an execution; indeed, the precept is strongly analogous to an order of sale under a chancery proceeding decreeing separate amounts due against specific pieces of property, and ordering a sale accordingly. In such cases, the execution, or order of sale, may be corrected ·by the judgment or decree, even after sale. *Doe* v. ·*Rue*, 4 Blackf. 263; *Doe* v. *Harter*, 1 Ind. 427; *Doe* v. *Harter*, 2 Ind. 252; *Doe* v. *Dutton*, 2 Ind. 309. But, as a general rule, an application to amend such a writ should be made before suit is brought.

6. The fourth paragraph of answer is *nul tiel record*. A demurrer was properly sustained to it for want of sufficient facts. It puts nothing in issue which decides the case. It does not deny the contract to do the work, nor that the work was done; and the facts which precede the contract, as we have seen, cannot be tried. There may be no such record, that is, no such record technically, and ·yet the appellee ˙have the right to recover.

7. It is shown in the record, by a bill of exceptions, that after issue joined, the trial of the cause was submitted to the court; that the court found generally for the appellant, and rendered final judgment for costs against the appellee; that the court, several days after such general finding and judgment for costs, without any request from either party to make a special finding before made, without any motion for a new trial having been made, and without any written motion made in the cause, set aside such judgment for costs and general finding, and, over the objection of appellant, without hearing evidence or having a new trial, made a special finding in favor of appellee, and decreed the sale of said lots to pay their respective assessments, with costs, etc., to all of which the appellant excepted at the time.

Such a practice cannot be sustained. It is expressly held otherwise, and the reasons fully given, in *Wright* v. *Hawkens*, 36 Ind. 264.

8. The last proposition questions the sufficiency of the evidence to support the finding. Upon this point we express no opinion.

The judgment is reversed, with costs. Cause remanded for further proceedings.