FAYETTE COUNTY DEPARTMENT OF PUBLIC WELFARE, CONNERSVILLE, Indiana, and State of Indiana, Department of Public Welfare, Appellants (Respondents Below),

v.

The HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, Indiana, d/b/a Wishard Memorial Hospital, Appellee (Petitioner Below).

No. 2-1278-A-426.

Court of Appeals of Indiana, Fourth District.

June 17, 1980.

Theodore L. Sendak, Atty. Gen., Carol Ann Bowman, Deputy Atty. Gen., Indianapolis, for appellants.

Robert B. Hebert, Harrison, Moberly & Gaston, Indianapolis, for appellee.

MILLER, Presiding Judge.

This appeal arose from a dispute between the Health and Hospital Corporation of Marion County, Indiana, d/b/a Wishard Memorial Hospital (Wishard), Appellee, and the Fayette County Department of Public Welfare (Fayette Welfare), Appellant. The issue was which of these two publicly funded entities would be burdened with the hospital bill of a non-resident indigent who had apparently attempted suicide while visiting a friend in Fayette County, Indiana and thereafter was treated at Wishard. The total amount of the bill was $55,684.03. Fayette Welfare claimed Wishard had failed to promptly notify it, pursuant to *Ind. Code* 12–5–2–1,[1] of Wishard's treatment of the indigent person and, therefore, was precluded from making a demand for the bill. This matter was first heard by a hearing officer of the Indiana State Department of Public Welfare (State Department), Appellant herein, whose findings in favor of Fayette Welfare were adopted by the State Department. Wishard sought judicial review and was successful in the Hamilton Circuit Court. The State Department and Fayette County now bring this appeal.

We reverse and remand with instructions.

## ISSUES

Appellants raise the following issues:

1. Was the trial court's decision contrary to law and did the trial court err in finding the State Department's decision to be arbitrary and capricious?

2. Did the trial court err in its finding of fact that a document entitled "The 1935 Highway Emergency Medical Act," which contained material Wishard claimed was justification for its delay in notifying Fayette Welfare, was published and distributed by the State Department?

## FACTS

On March 9, 1977, Delores Hall, a nonresident indigent, suffered a self-inflicted gunshot wound of the left chest during an apparent suicide attempt while visiting a friend in Fayette County, Indiana. She was initially treated at the Fayette County Memorial Hospital but was transferred on an emergency basis to Wishard Hospital the following day because it was felt she might be in need of services which were unavailable at the Fayette Hospital. From March 20, 1977, to May 17, 1977, she remained in the intensive care unit, largely in a comatose condition. After her removal to a regular hospital ward, Charles L. Terry, a Wishard patient account representative, attempted several times to interview her concerning her financial condition. However, due to a surgically implanted tracheal tube,

1. *Ind. Code* 12–5–2–1. Eligibility; investigations; determination of liability. Sec. 1. On and after the effective date of this act, in the event any indigent person is injured or in the event any indigent person who is a nonresident of this state becomes ill in any county of this state, any hospital to which such indigent person is admitted for care or any physician furnishing medical services to such indigent person shall within seventy-two (72) hours, not counting holidays or weekends, report such matter to the department of public welfare of the county in which the person is injured or becomes ill. The department shall promptly complete an investigation to determine the legal residence, establish need and determine eligibility for the payment of the cost of medical or hospital care for such indigent person and shall promptly report its findings to the reporting hospital or physician.

The cost of any such medical or hospital care arising out of such illness or accident shall be borne by the county of the legal residence of the indigent person: Provided, That is situations where it is determined that the indigent person has no legal residence in any county of this state or where the legal residence of the indigent person is not determined, the cost of any such medical, hospital care and the cost of transportation to the place of treatment arising out of the illness or accident shall be borne by the county in which the indigent person is injured or become ill. The cost of the medical, hospital care and the cost of transportation to the place of treatment shall be paid out of any money appropriated to the county welfare department. For the purpose of this act the term "indigent person" shall mean a person without financial resources to pay for such medical or hospital care.

she remained unable to communicate and Terry was unable to obtain any financial information. During the latter part of May, 1977, while Terry was on vacation, no other patient account representative attempted to interview Delores. Immediately upon his return on June 9, 1977, Terry was able to complete the financial interview. It was determined that Mrs. Hall was a nonresident indigent without any ability to pay the final hospital account of $55,684.03. In evaluating possible methods of payment, Terry rejected the possibility of notifying Fayette Welfare under *Ind. Code* 12–5–2–1, *supra,* because of a memorandum in Wishard's possession allegedly published by the State Department which incorrectly stated that the law did not apply to intentionally inflicted injuries. However, on June 30, 1977, Terry was advised by Wishard's legal counsel that the above statute was in fact applicable in this situation. Terry immediately prepared and mailed the appropriate notice form to Fayette Welfare. This notice and claim for welfare reimbursement was received and denied by Fayette Welfare on July 1, 1977, for failure to comply with the statute's 72 hour notification requirement. Wishard appealed this initial denial to the State Department pursuant to Ind. Code 12–5–2–2.[2]

A hearing was held before a hearing officer of the State Department on October 11, 1977. On December 29, 1977, the State Department issued findings of fact and a decision upholding Fayette Welfare's denial of the claim. Thereafter, Wishard filed a request for review with the State Department. On March 15, 1978, the State Department sustained the hearing officer's decision. Wishard filed its Verified Petition for Judicial Review on March 30, 1978, and after a change of venue, the matter was considered in the Hamilton Circuit Court. On July 11, 1978, Findings of Fact and Conclusions of Law were entered by the court, and the decision of the State Department denying reimbursement was set aside as being arbitrary and capricious and not in accordance with the law.

The findings and decision of the hearing officer adopted by the State Department were as follows:

*FACTS:*

After hearing the testimony and weighing the evidence, the State Department of Public Welfare hereby finds the following to be the facts:

1. Delores Hall suffered a self-inflicted gunshot wound of the left chest March 19, 1977.

2. On March 20, 1977, Hall was transferred from Fayette Memorial Hospital to Wishard Memorial Hospital where she remained until her discharge June 8, 1977. From her admittance date until May 17, 1977, Hall was hospitalized in the Intensive Care Unit where patient interviews by the medical staff were prohibited.

---

**2.** *Ind. Code* 12–5–2–2. Eligibility; appeals. Sec. 2. If the county department of public welfare of the county in which the person is injured or becomes ill fails to make an investigation and determination within ninety (90) days after receiving the report or if it determines that the injured or ill person is not eligible for the payment of costs of medical or hospital care, or if the county responsible for the payment of the cost of the medical or hospital care of the injured or ill person fails or refuses to accept responsibility for the payment of such costs, the hospital or physician affected thereby may appeal the matter to the state department of public welfare. The state department shall thereupon fix a time and place for a hearing on the matter by the administrator of the state department of public welfare as hearing officer or by a person appointed by him as hearing officer. A notice of the hearing shall be served upon all parties or persons interested in the matter at least twenty (20) days before the time fixed for the hearing.

The state department may make such additional investigation as may be deemed necessary for presentation at the hearing. The state department shall determine the eligibility of the injured or ill person for the payment of costs of medical or hospital care under the provisions of this act and, if found to be eligible, the responsible county and the reasonable costs of such care due the person or persons furnishing the care. Its decision shall be final: Provided, That a party or person aggrieved by such determination shall have the right of appeal from such decision in accordance with Acts 1947, c. 365 as amended. The state department of public welfare may adopt rules and regulations governing the procedure for carrying out the provisions of this act.

(See Appellant's Exhibit Number 1 and Number 2)

3. On May 29, 1977, Hall's tracheostomy tube was removed and she began to resume normal living. (see attending physician's report—Appellant's Exhibit Number 2).

4. No patient interview was conducted of Delores Hall until June 9, 1977 since Charles L. Terry was on a two (2) week vacation beginning the last week of May.

5. Even though it was determined through the patient interview of June 9 that Hall had no resources to pay for the medical services provided her, the Hospital did not send a DPW Form 475 to the Fayette County Department until June 30, 1977.

6. DPW Form 475 serves as the notice pursuant to I.C. 12–5–2–1 for the County Department to investigate the eligibility of an individual for the Hospital Medical Program.

7. I.C. 12–5–2–1 states that notification by the Hospital to the County Department shall occur within seventy-two (72) hours, not counting holidays or weekends, of the injury or illness.

*CONCLUSIONS:*

Based upon the foregoing facts, the State Department of Public Welfare hereby concludes that:

1. Although Hall could not be interviewed within the seventy-two (72) hours of her admittance to Wishard Memorial Hospital, her health would have tolerated this interview and the interview could have been conducted some eleven (11) days before it actually did occur.

2. It was medically possible to have sent a DPW Form 475 to the County Department some thirty-two (32) days before the actual referral occurred.

3. Although Indiana caselaw interprets the seventy-two (72) hour provision in I.C. 12–5–2–1 as directory and not mandatory, the facts of that case can be distinguished from the case under appeal. In *Allen County Department of Public Welfare v. Ball Memorial Hospital,* [253 Ind. 179] 252 N.E.2d 424 (1969), the Court held that the seventy-two (72) hour period did not begin to run until the Hospital had reasonable cause to believe that the patient was indigent.

4. In the case under appeal, it was medically possible to interview Hall as early as May 29; but due to Mr. Terry's vacation, Hall's interview did not occur until June 9, 1977. Clearly, the interview itself was untimely; however, by waiting until June 30 (more than seventy-two (72) hours after the interview) to send the DPW 475, the Hospital is precluded from using the Court's argument in *Ball Memorial* (supra).

5. Further, there is no exception to the seventy-two (72) hour time limitation, as provided by I.C. 12–5–2–1, because an employee of the Hospital performed his duties under some personal misconception of the laws.

*DECISION:*

WHEREFORE, the State Department of Public Welfare sustains the Fayette County Department's decision to deny the Hospital's referral since the County Department was notified more than seventy-two (72) hours after the Hospital could reasonably determine indigency.

The Trial Court adopted the seven findings of fact of the State Department and added the following pertinent additional findings of fact:

\* \* \* \* \* \*

2. That at the time of such injury, Delores Hall was a non-resident indigent, temporarily residing in Fayette County, Indiana; and

\* \* \* \* \* \*

5. That no patient interview was conducted with Delores Hall until June 9, 1977 for the reasons that Charles L. Terry, Patient Account Representative, was on a two week vacation beginning the last week of May, the remaining two patient account representatives were unable to conduct the interview due to their own heavy case loads, and that it did not

appear to Charles L. Terry that Delores Hall would be capable of submitting to a patient interview during the period of his absence from the hospital; and

\* \* \* \* \* \*

9. That it was not until June 9, 1977 and upon the conclusion of the patient interview with Delores Hall that it was determined that Delores Hall was a non-resident indigent individual having suffered an injury within the meaning of the provisions of Ind. Code 1971, Sec. 12–5–2–1; and

10. That at all times relevant to the occurrences herein described, there existed a certain document, published and distributed to health care providers, including the hospital herein, by the State of Indiana Department of Public Welfare, entitled "The 1935 Highway Emergency Medical Act". This document, which is a memorandum summary of the provisions of Ind. Code 1971, Sec. 12–5–2–1 states, *inter alia*, that the aforesaid statutory provisions apply and "will cover hospitalization for any accidental injury for which no other means of payment can be obtained"; and

11. That the aforesaid document misstates the provisions of Ind. Code 1971, Sec. 12–5–2–1 in that said statutory provision will cover hospitalization for any injury suffered by a non-resident indigent, but that such injury need not have been accidental in nature; and

12. That Charles Terry, Patient Account Representative, as well as other members of the business office staff at the hospital were aware of the provisions of such document, relied upon the same, and concluded that since Delores Hall's injury was of an intentional nature as opposed to accidental, the provisions of Ind. Code 1971, Sec. 12–5–2–1 were inapplicable and that no medical reimbursement could be sought from Fayette County Department of Public Welfare; and

13. That on June 30, 1977, Charles Terry, after further conferring with the hospital business office staff was referred to the hospital's legal counsel, who advised of this error in the aforesaid document. Thereafter, notification was sent by the hospital to the Fayette County Department of Public Welfare pursuant to the provisions of Ind. Code 1971, Sec. 12–5–2–1; and

14. That the hospital account balance for treatment of Delores Hall upon discharge was in the amount of $55,684.03; and

15. That the Fayette County Department of Public Welfare was not prejudiced by the delay in notification as it was reasonably determined that Delores Hall was financially indigent at the time of suffering the injury, at the time of her admission to Fayette County Memorial Hospital, at the time of her admission to Wishard Memorial Hospital, and upon her discharge from Wishard Memorial Hospital; and

16. That the hospital had no contacts with Delores Hall other than having provided medical care to the patient, nor was the hospital legally obligated to provide such medical care under the provisions of Ind. Code 1971, Sec. 16–12–21–1 et seq.; and

17. That Fayette County had numerous contacts with the patient and was in a superior position to know of the patient's background in view of the following: (A) The Patient temporarily resided in Connersville, Indiana; and (B) the cause of the injury was investigated by a Fayette County police agency; and (C) the initial treatment of the patient was rendered at the Fayette County Memorial Hospital; and (D) the patient was transferred to Marion County by a Fayette County Ambulance Service; and

18. That the director of the Fayette County Department of Public Welfare, upon receiving notification from the hospital made an investigation of the patient's background and confirmed such findings as were determined by the investigation conducted by Charles Terry, Patient Account Representative of Wishard Memorial Hospital.

Relying upon *Ball Memorial Hospital Association, Inc., supra,* and *County Department of Public Welfare of White County v. Trustees of Indiana University,* (1969) 145 Ind.App. 392, 251 N.E.2d 456, the trial court concluded:

"5. [T]he totality of the circumstances involved in the instant proceeding were not considered by the State of Indiana Department of Public Welfare as prescribed by law and, accordingly, such decision is not in accordance with law; and

6. That the State of Indiana Department of Public Welfare and, by virtue of the provisions of Ind. Code 1971, Sec. 12–1–3–3,[3] the Fayette County Department of Public Welfare are estopped to deny the eligibility of the hospital for medical benefits under the provisions of Ind. Code 1971, Sec. 12–5–2–1[4] based upon their publication of and the hospital's reliance upon an erroneous statement of the law. . . .

. . . . .

8. That the circumstances of the instant matter dictate that the equities are clearly with the petitioner and against the respondents herein, that the petitioner, while failing to follow the letter of the law, has abided by the spirit of the law, and that the decision of the State of Indiana Department of Public Welfare is clearly inapposite to this finding and not otherwise in accordance with law.

9. That the evidence presented by the parties herein to the State of Indiana Department of Public Welfare was without contradiction and the facts clearly establish that the decision of the State of Indiana Department of Public Welfare is arbitrary and capricious. . . .

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court that the decision of the State of Indiana Department of Public Welfare be, and hereby is set aside, that this case is remanded to the State of Indiana Department of Public Welfare for further proceedings and that the State of Indiana Department of Public Welfare enter its decision consistent with this opinion."

## ISSUE I

We first consider whether the trial court correctly determined as a matter of law that the State Department's decision was "arbitrary and capricious." Since the State Department[5] purports to distinguish the facts of the instant case from those in *Ball Memorial Hospital, supra,* and in so doing seeks to justify its decision, our analysis begins by considering the meaning of that case.

In *Ball Memorial Hospital* the patient was unconscious when he first entered the hospital and remained in that state for some two weeks thereafter. Seeking to ascertain the patient's ability to pay for services, the hospital first contacted his wife on the day the patient was admitted, but at that time she was unable to say whether there was any insurance. The hospital could not locate her again until five days had elapsed; at that time, while the patient was still comatose, the hospital learned from the patient's wife there was no insurance. On the same day the hospital mailed the requisite notification of indigency to the Delaware County Department of Public Welfare. The hospital's claim for reimbursement was ultimately rejected by the State Department because notice of indigency was not given within seventy-two hours. That decision was reversed, however, by the Delaware Circuit Court, and our Supreme Court upheld the circuit court's determination.

We note the hospital in *Ball Memorial Hospital* presented two interpretations of the notice statute: The seventy-two hours does not begin to run until the hospital has "reasonable cause" to believe a patient is

---

3. For the reasons noted herein, it is unnecessary to our opinion to consider whether the court correctly applied this statute, the current provisions of which concern the office of county director of public welfare.

4. Note 1 *supra.*

5. Of course Fayette Welfare joins in this argument.

indigent; and that the language of the notice statute is directory rather than mandatory. The Supreme Court adopted the second of these readings, concluding "[w]e are of the opinion that the statute in question is merely directory as to the three day time period." *Id.* 253 Ind. at 181, 252 N.E.2d at 427.

Contrary to the State Department's reading of the case, *Ball Memorial Hospital* thus did not find the seventy-two hour period begins to run when the hospital has reasonable cause to believe a patient is indigent. The appropriate test identified by the *Ball* Court is whether the notice given was "prompt under the circumstances," *id* 253 Ind. at 186, 252 N.E.2d at 428, a factual determination which is not dictated by the seventy-two hour directory language of the statute. Thus, it was held:

> "[W]here the facts show notice was given *promptly*, as soon as the hospital had a reasonable opportunity to ascertain the facts under which notice should be given, it has performed its responsibility under the statute, and should not be defaulted or penalized, as suggested by the appellant in this case." (Emphasis added.)

*Id.* 253 Ind. at 187, 252 N.E.2d at 428.

■ It is evident, however, that the test established by *Ball Memorial Hospital* is not simply one of promptness. While recognizing that particular notice may in certain circumstances be "prompt" as a matter of law, we believe that crucial question is whether the welfare department was prejudiced by the notice it received, since, as the Court in *Ball Memorial Hospital* determined, "[t]he obvious purpose of the notice provision is to afford the Welfare department of the county an adequate opportunity to investigate and determine eligibility." *Id.* at 428. Where the welfare department is in no way prejudiced by the notice it does receive, it is unnecessary for this or any reviewing court to determine whether such notice was "prompt" as a matter of law.

■ Thus, the reasoning of *Ball Memorial Hospital* requires in cases such as this, where notice is challenged for lack of promptness, that the fact-finder should first determine whether the welfare department had "an adequate opportunity to investigate and determine eligibility." No such finding was made by the hearing officer in the present case, and the trial court properly set aside the State Department's decision. Rather than finding such decision arbitrary and capricious, however, the court below should have remanded the cause as we do now for further factual determination by the hearing officer.

The question of prejudice involved numerous factual issues within the hearing officer's purview. He should receive evidence on these issues and arrive at specific findings of fact. Although the trial court purported to decide Fayette Welfare was not prejudiced,[6] and the parties on appeal have briefed this question, we conclude such arguments are properly directed to the primary fact-finder. Neither this Court nor the court below are best equipped to decide such factual questions; nor is it our function as reviewing courts to do so. By statute, a court reviewing agency action "shall not try or determine said cause de novo, but the facts shall be considered and determined exclusively upon the record."[7] The record in this case was inadequately prepared on the issue of prejudice to Fayette Welfare. Without such findings this Court is unable to decide whether the agency's action is arbitrary and capricious, or whether the relief afforded indigents is administered on a "humane and not a technical basis." *County Department of Public Welfare of White County v. Trustees of Indiana University, supra* 145 Ind.App. at 402, 251 N.E.2d at 464.

### ISSUE II

Our resolution of the first issue in this case obviates the necessity to decide the

---

6. *See* Finding of Fact No. 15 *supra.*

7. Ind. Code 4–22–1–18. *See, e. g., Department of Financial Institutions v. Lizton,* (1969) 253 Ind. 172, 252 N.E.2d 248.

second question, which is whether the trial court erred in finding a document entitled "The 1935 Highway Emergency Medical Act" was published and distributed by the State Department. Such finding is essential to the trial court's conclusion of law that because the hospital relied on the document, Fayette Welfare and the State Department are estopped to challenge any delay caused by misleading statements in the document.[8]

The question of estoppel, like the question of what is prompt as a matter of law, need only be decided if there is an initial finding there was inadequate opportunity for Fayette Welfare to investigate eligibility. As noted above, the hearing officer in the instant case made no pertinent finding.

We thus conclude, without addressing the correctness of the trial court's finding or conclusion, there was no reason for it to resolve the estoppel issue. Because a new hearing is to be held in this action, we assume the parties will submit further evidence on this question in that hearing.

We reverse and remand to the trial court for proceedings consistent with this opinion.

YOUNG and CHIPMAN, JJ., concur.

---

8. We note there may be evidence of a time lapse between the time the patient could have been interviewed and the actual reliance by Wishard on the document in question. Of course an estoppel theory would relate only to any delay caused by such actual reliance, and not to any delay occasioned solely by the account representative's vacation and Wishard's concurrent failure to interview the patient after she became conscious. The hearing officer's findings of fact should clarify these issues so Wishard's theory of estoppel can be resolved.