PUTNAM COUNTY DEPARTMENT OF
PUBLIC WELFARE, Appellant
(Respondent Below),

v.

The METHODIST HOSPITAL OF
INDIANA, INC., Appellee
(Petitioner Below),

Indiana State Department of Public Welfare, Indiana State Board of Public Welfare, Appellees (Respondents Below).

No. 2–185A1.

Court of Appeals of Indiana,
Second District.

Jan. 20, 1986.

James Harvey Young, Greencastle, James E. Mahoney, Indianapolis, for appellant.

D.L. Hardamon, John M. Heeter, P.C., Indianapolis, for appellee.

SHIELDS, Judge.

The Putnam County Department of Public Welfare (County) appeals the trial court's reversal of an administrative agency's denial of Helen Crawley's (Crawley's) Hospital Care for the Indigent (HCI) application.

We affirm.

## FACTS

From April 22, 1982, to May 28, 1982, Crawley was hospitalized at Methodist Hospital of Indiana, Inc. (Methodist) for treatment of a fractured shoulder. Upon her Emergency Room admission, Methodist personnel were advised Crawley was insured by Medicare although they were not provided with either her Medicare number or her social security number. After admission, Crawley became confused, disoriented and somnolent for approximately the next three weeks during which the business office was denied contact with her.

Before surgery on May 25, 1982, business office personnel were allowed to interview Crawley. At that interview, it was determined Crawley was not insured. Two days after surgery, Crawley completed an HCI application for medical benefits which was submitted to Putnam County the next day. Putnam County denied the application as untimely.

Methodist appealed the denial to the Indiana Department of Public Welfare. After an evidentiary hearing, the hearing officer recommended denial based on the entry of the following pertinent findings of fact:

"1. That Helen Crawley was admitted to Methodist Hospital, in Indianapolis, Indiana on April 22, 1982 for treatment of an injury to her left shoulder.

. . . .

2. That an application for H.C.I. benefits for Helen Crawley was filed with the Putnam County Department of Public Welfare on May 28, 1982; it had been completed on May 27, 1982.

5. That the Putnam County Department of Public Welfare denied this application for the following reason: 'Does not meet technical eligibility. Hospital did not forward application within seven (7) days of admission.'

. . . .

9. That according to I.C. 12–5–6–4 Section 4(a): 'The application must be filed with the County Department of Public Welfare not more than seven (7) days, excluding holidays and weekends, after the admission of the patient to the hospital, unless the patient is medically unable and the next of kin or legal representative is unavailable.'

10. That the application was not timely filed.

11. That at the time the County Department acted on this application, it had no information from the hospital or patient to justify applying a longer time standard than seven days. The nature of the illness or injury listed on the application was 'Anemia unknown etiology, fracture proximal left humerus.' The County Department therefore had no reason at the time of denial to suspect that the appellant had been medically unable to make a timely application.

12. That the appellant's nineteen year old daughter, Donna Jo Crawley, resided with the appellant at the time of her hospitalization and visited the appellant during her hospital stay. That the appellant's sister, Ruth Brinson, resided in Indianapolis and also visited the appellant during her hospital stay. According to the discharge summary, Mrs. Brinson participated in *medical* discussions about the patient prior to discharge.

13. That neither of these relatives responded to requests left at the nurses' station for contact to be made with the business office.

14. That the hospital did not attempt to contact them by telephone until May

24, 1982 and neither was willing to assist the business office when contacted.

15. That *if* the appellant was medically unable to apply, her relatives were available to do so.

16. That the County Department's denial of HCI was correct based on Facts above numbered eleven and fifteen."

Record at 14–15. (emphasis in original). The Board of the Department of Public Welfare adopted the hearing officer's recommendation.

On July 22, 1983, Methodist filed a Verified Petition for Judicial Review in the Marion County Superior Court. On October 3, 1984 the court reversed the denial of benefits and entered the following pertinent findings:

"2. That the patient was initially admitted to the hospital for the treatment of a broken arm and anemia; after which the medical records reflect that she became confused, anxious and tremulous with active visual hallucinations; with the patient remaining disoriented, confused and agitated with bizzare and childish behavior alternating with severe disorientation and somnolence for nearly three (3) weeks after admission.

3. That the patient incurred expenses at the hospital from April 22, 1982 to May 28, 1982 in the amount of Twenty-One Thousand Four Hundred Dollars Eighty-Five Cents ($21,400.85).

4. That on April 22, 1982 at the time of admission there was indication that patient's hospital expense would be paid by medicare.

5. That on April 26, 1982, after unsuccessful attempts by the hospital to verify the medicare coverage, the hospital commenced efforts to complete the Hospital Care for the Indigent, hereinafter referred to as 'HCI', application on behalf of the patient.

6. That the patient was medically unable to assist in the completion of the HCI application until May 25, 1982.

7. That 'available' is defined by Webster's New Collegiate Dictionary (1980 Edition), as follows:

'... present or ready for immediate use ... accessible, obtainable ... qualified or willing to do something or to assume a responsibility.'

8. That the next of kin, Donna Jo Crawley, daughter of Helen Crawley and Ruth Brinson, sister of Helen Crawley, were unavailable by their unwillingness *to assist* the hospital in the completion of the HCI application.

9. That on May 25, 1982, the hospital was permitted to complete the HCI application with the patient, due to improvement of the medical condition of the patient."

Record at 24 (emphasis in original). The court concluded Crawley's application was timely filed. Putnam County perfected this appeal.

## ISSUES

Putnam County raises the following issues for review:

1) Whether the administrative appeal of an adverse determination on an HCI application encompasses a de novo hearing; and

2) Whether the trial court erred in finding Crawley was medically unable and her next of kin were "unavailable" to assist in completing a "timely" HCI application.

## DISCUSSION

Ind.Code Ann. § 12–5–6–1 et seq. (Burns Supp.1982) provides financial assistance for medical treatment and hospital care provided to the indigent in Indiana. At issue here is Ind.Code § 12–5–6–4(a) which requires an application for payment to be submitted by the attending hospital to the county department of public welfare "not more than seven (7) days, excluding holidays and weekends, after the admission of the patient to the hospital, *unless the patient is medically unable and the next of kin or legal representative is unavailable." Id.* (emphasis added).

## I.

Putnam County argues Methodist is not entitled to rely on evidence of inability and unavailability introduced at the administrative hearing that was not also included in its initial HCI application. In other words, the County argues Methodist was required to include information justifying the delay when it submitted the application. Thus, the County seeks to confine review to the information provided with the HCI application, the form of which is prescribed by the Department of Public Welfare. Ind. Code § 12-5-6-4(b).

■ The statutory scheme does not countenance such a limited review, particularly in light of the humane purposes of the act involved. Indeed, Ind. Code § 12-5-6-8 specifically provides the adverse determination of a county department of public welfare may be appealed to the state department of public welfare via the mechanism of the Administrative Adjudication Act, Ind. Code Ann. § 4-22-1-1 et seq. (Burns Supp.1985). The Administrative Adjudication Act envisions a determination by the state department based upon evidence presented at the appeal hearing. *See e.g.,* Ind. Code §§ 4-22-1-7—4-22-1-10. Further, the evidence may include, but is not restricted to, the HCI application. *See Martin County Nursing Center, Inc. v. Medco Centers, Inc.,* 441 N.E.2d 964, 967 (Ind.App.1982). This is not to say inclusion of an explanation for the delay should not be the practice [1] but only that its omission from the application does not preclude its admissibility at a subsequent hearing. Confinement to the information initially provided on the HCI application would effectively repeal the statutory provisions for a hearing and the opportunity for presentation of evidence and denigrate the right to an appeal.

## II.

■ The County alleges the trial court erred in overturning the agency's findings that: 1) Methodist failed to meet its burden of proving Crawley was medically unable to assist in completing the HCI application,[2] and 2) Crawley's relatives were available to assist in completing the application.[3] The agency's finding regarding Crawley's ability to assist in completing the application is inconclusive. The agency only found that *"if* [Crawley] was medically unable to apply, her relatives were available to do so." Finding No. 15 (emphasis in original). By use of the "if" the agency failed to determine whether Crawley was medically unable to file an application and, instead, rested its decision on the finding that, in any event, Crawley's relatives were available to supply the information on Crawley's behalf. Therefore, the trial court's finding of Crawley's inability did not overturn an agency's finding, but instead is the trial court's determination as a matter of law based upon uncontroverted and nonconflicting evidence. This procedure was approved in *Department of Financial Institutions v. Wayne Bank and Trust Company,* 178 Ind.App. 265, 381 N.E.2d 1100, 1105 (1978). Consequently, there is no error in the trial court's determination Crawley was medically unable to assist in completing the HCI application.

■ The trial court was also correct in rejecting the agency's finding Crawley's next of kin were "available" to assist in filing the application because the agency erroneously interpreted the term "available". Although the agency found Crawley's daughter and sister visited Crawley during her hospital stay, the agency also specifically found neither of Crawley's relatives "responded to requests left at the

---

1. Indeed, inclusion of an explanation for the delay in the application should be the practice in order to avoid otherwise needless expenditures of administrative and judicial review resources.

2. Compare Agency's Finding No. 15, *supra* and Court's Finding No. 6, *supra.* The County argues the hearing officer's emphasis of the word "if" indicates Methodist did not meet its burden of proving Crawley was medically unable to assist. Appellant's Brief at i.

3. Compare Agency's Findings Nos. 12-15 and Court's Finding No. 8.

nurses's station for contact to be made with the business office." Record at 15. In addition, the agency found *"neither [relative] was willing* to assist the business office when contacted" by telephone on May 24, 1982. *Id.* (emphasis added). Thus, the agency was obviously interpretating "available" in the sense of physical presence.

The definition of "available" necessarily depends upon the facts and circumstances in view of the humane purposes of the act. At a minimum, availability in this context includes an element of willingness on the part of relatives to cooperate in the completion of the HCI application. The statutory language distinguishes between the "ability" of the applicant to provide information and the "availability" of the relatives to do so. *See* Ind. Code § 12–5–6–4(a). Although "able" merely connotes the capacity to accomplish an objective, "available" indicates a current readiness or willingness to do so. *See Black's Law Dictionary* (5th ed. 1979); *cf. Gardiner v. Review Board of Indiana Employment Security Division,* 137 Ind.App. 1, 5, 204 N.E.2d 677, 679 (1965) ("available for work" involves a demonstrated "willingness to work"). Although Crawley's next of kin may have been present at the hospital and, only by conjecture, "able" to assist, they were found by the agency to be "unwilling" to assist when contacted. Agency's Finding No. 15. As a matter of law, the agency erred in concluding Crawley's next-of-kin were "available" to assist in the application process.

Moreover, the trial court's conclusion the agency's denial of benefits is arbitrary, capricious, an abuse of discretion and not in accordance with law is errorless. The agency's error appears to stem from its misconception regarding the function of the statutory provision at issue. The statute does not expressly require resort to the next of kin to determine indigency and, consequently, to determine the necessity for filing an application. Rather, the statute contemplates resort to next of kin only to assist in filing the application once the patient's indigency has been determined.

Ind. Code § 12–5–6–4 generally provides for submission of an application to the county department of public welfare by a hospital providing treatment to an indigent.[4] The submission of an application is necessary under Ind. Code § 12–5–6–5 to trigger an investigation by the county to determine the patient's eligibility for assistance under the act. Upon a confirmation of the patient's status as an indigent eligible for assistance, the county is obligated to reimburse the hospital for emergency medical treatment.

Ind. Code § 12–5–6–4 additionally requires "filing" the application "not more than seven (7) days, ..., after the admission of the patient to the hospital, unless the patient is medically unable and the next of kin or legal representative is unavailable." The application is a lengthy document totalling seven pages and calls for detailed personal information regarding the nature of the injury or illness, the indigent's income, employment and insurance data, and detailed statements regarding the

---

4. Ind. Code § 12–5–6–4(a) provides:
"In order to receive payment from the county department of public welfare for the costs incurred in providing treatment to an indigent person, a hospital shall file an application as follows:
(1) if the patient is a resident of Indiana, the application must be filed with the county department of public welfare of the county of residence of the patient;
(2) if the patient is not a resident of Indiana, the application must be filed with the county department of public welfare of the county in which the patient became in need of medical care; or

(3) if the hospital cannot determine the county of residence of the patient, the application must be filed with the county department of public welfare of the county in which the patient became in need of medical care.
The application must be filed with the county department of public welfare not more than seven (7) days, excluding holidays and weekends, after the admission of the patient to the hospital, unless the patient is medically unable and the next of kin or legal representative is unavailable."

indigent's real and personal property interests, additional resources, and living expenses. Record at 74–80. Significantly, the time limitation provision necessarily presupposes the hospital's reasonable belief, or reasonable opportunity to ascertain, the patient's status as an indigent upon admission, and implies the hospital's recognition of the necessity for filing an application in the first instance.[5]

This construction of the statute is supported by an examination of the predecessor statute. *See Allen County Department of Public Welfare v. Ball Memorial Hospital Association, Inc.,* 253 Ind. 179, 252 N.E.2d 424, 427 (1969). The current act providing emergency hospital care for the indigent, Ind. Code § 12–5–6–1 et seq., was added by Acts 1981, P.L. 144, Sec. 1. Prior statutory provisions for emergency medical treatment were simultaneously repealed. Acts 1981, P.L. 144, Sec. 2. The predecessor statute required a hospital to "report" the medical treatment of an alleged indigent to the county welfare department within seventy-two [72] hours of admission. Ind. Code § 12–5–2–1 (Burns Repl.1981).

This predecessor time limitation, and the welfare legislation generally at issue, was judicially construed in a liberal fashion to avoid absurd and harsh results which would frustrate the humane purposes of the act. *E.g., Allen County Department of Public Welfare v. Ball Memorial Hospital Association, Inc.,* 252 N.E.2d at 428; *c.f., County Department of Public Welfare of White County v. Trustees of Indiana University,* 145 Ind.App. 392, 251 N.E.2d 456 (1969). In particular, the time limitation was construed as procedural rather than substantive, and directory rather than mandatory, in view of the "obvious purpose of the notice provision to afford the Welfare Department of the county an adequate opportunity to investigate and determine eligibility." *Allen County,* 252 N.E.2d at 428. A strict adherence to the time limitation advocated in the case at bar, regardless of the circumstances, was rejected as producing absurd results without furthering the purpose of the time limitation:

"To hold that the [former] three days period commences upon admission to the hospital and no notice can thereafter be given, irrespective of the particular circumstances of the case, would place an unbearable burden on the welfare department. For then a hospital would be well advised to notify the welfare department as to each and every patient admitted to the hospital for fear of ascertaining, more than three days after admission, the patient's inability to pay. Such forced notification in every case would cause an immense increase in clerical work and defeat the real purpose of notice under the statute. What of the patient whose resources are exhausted after several days in the hospital? Must he be excluded because seventy-two hours have elapsed?"[6]

---

5. Ind. Code § 12–5–6–3 only requires a hospital to provide a patient with a statement of public welfare's eligibility and benefit standards if "the hospital has reason to believe that the patient may be indigent," or if the patient requests a statement of the standards. A literal interpretation of the seven-day time limitation might well require a hospital to submit an application before the hospital was even required by law to apprise the patient of the program's existence.

6. Indeed, another provision of the current statute, Ind. Code § 12–5–6–2, does not appear to require admission to a hospital as a prerequisite to eligibility. Ind. Code § 12–5–6–2(a) provides, in pertinent part:
　　"A resident of Indiana who meets the income and resource standards established by the state department of public welfare under subsection (c) is eligible for assistance to pay for *any part* of the cost of the treatment of a disease, defect, injury, or deformity, if the treatment is of an emergency nature and is provided to the resident *in a hospital in Indiana,* or is provided to a resident who has been *admitted to a hospital in Indiana, or is the direct consequence of such emergency or admission."*
(Emphasis added). See now Indiana Code § 12–5–6–2.1 as added by Acts 1984, P.L. 82, Sec. 1. The time provision, then, does not appear to apply to all otherwise "eligible" patients since the time limitation provision expressly begins to run from the date "of admission" only.

*Id.* Other problems in a strict application of the statute arose when a patient was unconscious upon admission or the necessary information was otherwise unavailable. *Allen County,* 252 N.E.2d at 428.

Consequently, our supreme court held "where the facts show notice was given promptly, as soon as the hospital had a reasonable opportunity to ascertain the facts under which notice should be given, it has performed its responsibility under the [former] statute, and should not be defaulted or penalized." *Id.* In *Fayette County Department of Public Welfare v. Health and Hospital Corporation of Marion County,* 405 N.E.2d 919 (Ind.App.1980), the court determined the crucial question was "whether the welfare department was prejudiced by the notice it received." *Id.* at 925. In other words, the fact-finder was required to first determine whether the welfare department had an adequate opportunity to determine eligibility. In the event the timing of the notification by the hospital prejudiced the welfare department's opportunity to investigate and determine the patient's eligibility, the question became whether the notice was nonetheless "prompt under the circumstances." *Id.* at 925 *quoting Allen County,* 253 Ind. at 186, 252 N.E.2d at 428.

The current statutory time provision appears to be a legislative attempt to respond to the concerns previously expressed in the course of judicial construction of the act in question. The time limit was expanded and an exception was engrafted to exclude instances where the patient is medically unable and the next of kin unavailable to provide the information needed to file an application for benefits. This exception recognized the inability of a hospital to comply with a time limitation in the event the information needed to file a timely application was unavailable to hospital personnel. However, the current statute continues to imply, as did the predecessor statute, the hospital's knowledge of the patient's indigency. Therefore, as under the predecessor statute, the time limitation is only applicable after the hospital knows or has had a reasonable opportunity to ascertain the patient's indigency.

This question was resolved in Crawley's favor by the trial court in the case at bar, again based upon nonconflicting and uncontroverted evidence. When Methodist was unable to verify Crawley's asserted Medicaid coverage on April 26, 1982, it was also unable to ascertain her financial circumstances due to her incoherency. That condition continued until May 25, 1982 when Crawley was sufficiently coherent that Methodist could and did ascertain her indigency. Therefore, the HCI application received by County May 28, 1982 was timely as a matter of law.

Judgment affirmed.

SULLIVAN and MILLER (sitting by designation), JJ., concur.