## LANDES ET AL. *v.* STATE, EX REL. MATSON.

[No. 20,066.    Filed April 28, 1903.]

MUNICIPAL CORPORATIONS.—*Ordinances.*—The act of 1899 (Acts 1899, p. 125) does not affect the powers of common councils to pass ordinances, nor the duties directed of city officers with respect to the enrolling, attesting, and signing of the same, except to invest the mayor with the right of veto. *p. 485.*

SAME.—*Ordinances.*—The provisions of the act of 1899 (Acts 1899, p. 125) as to the enrollment, attestation, and approval by the mayor of a city ordinance are merely directory, and the appointment of officers under an ordinance is not invalid because the appointment was made before the ordinance was enrolled, attested, and signed by the clerk as directed by said act. *pp. 484, 485.*

SAME.—*Ordinances.*—*Passage.*—*Parliamentary Law.*—In a proceeding to remove members of a city council appointed under an ordinance increasing the number of city wards, on the ground that the ordinance was passed on first reading without a suspension of the rules, an allegation in the complaint, that §18, article 4, of the state Constitution, which requires that every bill shall be read by sections on three several days, unless the three several readings are dispensed with by a two-thirds vote "is a general rule of parliamentary law," will be regarded as a conclusion of the pleader, in the absence of an averment that the council had adopted it as one of its governing rules. *pp. 488, 489.*

SAME.—*Ordinances.*—*Passage.*—*Parliamentary Law.*—Where the rules of order of the common council of a city provided that the general rules of parliamentary law, so far as the same were applicable, should be considered the rules of the common council, the common council has the right to determine what rules are general and their applicability to the business before them, and the court can not say as a matter of law that it was incumbent upon the council to read a certain ordinance on three several days before its final passage or that a single reading was insufficient. *p. 489.*

From Putnam Circuit Court; *P. O. Colliver,* Judge.

Information by the State on the relation of Smith C. Matson, prosecuting attorney, against Frank L. Landes and others. From a judgment overruling a demurrer to the complaint and sustaining a demurrer to an answer, defendants appeal. *Reversed.*

*B. F. Corwin, S. A. Hays, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellants.

*S. C. Matson, P. A. Mathias, H. H. Mathias* and *G. A. Knight,* for appellee.

HADLEY, C. J.—Information by the prosecuting attorney for a judgment of ouster against appellants from exercising the office of common councilmen of the city of Greencastle, to which office they claim to have been appointed by the common council of that city.

The information, in substance, charges that on the 13th day of May, 1902, and ever since 1867, Greencastle was a city, duly incorporated under the general laws of the State of Indiana for the incorporation of cities; that said city, upon its incorporation, was divided into three wards, and elected a common council, composed of six members, two from each ward; that said city was so divided and said common council so composed on said 13th day of May, 1902; that on said date, and at a regular meeting of said common council, all the councilmen and mayor being present, an ordinance was introduced for the purpose of dividing said city into wards and voting precincts, and redistricting said city for ward and voting precinct purposes and for the purpose of holding city elections; that upon said ordinance being read at said meeting, the same was put upon its passage, and upon the call of the yeas and nays three of the councilmen voted in favor of said ordinance and three refused to vote; that thereupon the mayor, treating said vote as a tie, voted for said ordinance, declared the same adopted, and before the adjournment of said meeting attached his signature thereto; that by the terms of said

ordinance said city was divided into four wards, and their boundaries defined; that immediately after the passage of said ordinance as aforesaid the common council, at said meeting, appointed the defendants as councilmen to fill the pretended vacancies occasioned by the creation of an additional ward in said city; that immediately after their said election or appointment as aforesaid the defendants were duly sworn as councilmen, and took their seats as such at the next meeting, and have ever since continued to act as such under and by virtue of said appointment; that the defendants wrongfully and unlawfully hold said offices of councilmen, and have no legal title thereto, because: (1) The said ordinance creating said pretended vacancies which the defendants were appointed to fill was not legally and validly adopted, for the same was not enrolled, attested, and signed by the clerk before being signed by the mayor, as required by §1 of the statute approved February 24, 1899. (2) No record of the time of the presentation of said ordinance to the mayor was ever made by the clerk, as by said §1 of said statute provided. (3) On the 26th day of August, 1890, the common council of said city, by an ordinance duly established and adopted, prescribed certain rules and regulations for the government of the city council, its officers, and officers connected with the city government, which ordinance was in full force and effect on said 13th day of May, 1902, among which rules are the following: "29. The general rules of parliamentary law, so far as the same are applicable, are to be considered the rules of the common council, unless the same conflict with any of the rules herein prescribed." "31. No rule shall be suspended, except by an affirmative vote on call of the roll by two-thirds of the members of the council." That the following is a general rule of parliamentary law in force on said 13th day of May, 1902, and ever since, as prescribed by §18, article 4, of the Constitution of the State of Indiana, to wit: "Every bill shall be read, by

sections, on three several days, in each house; unless in case of emergency, two-thirds of the house where such bill may be depending shall, by a vote of yeas and nays, deem it expedient to dispense with this rule," and is also a general rule of parliamentary law in general use in legislative bodies; that at the time of the pretended adoption of said ordinance, dividing said city into four wards, by said common council at said meeting on said 13th day of May, 1902, said ordinance was read only once at the meeting, and had never been read at any previous meeting; that the common council at said meeting failed and neglected to pass any motion or resolution suspending said rule twenty-nine by an affirmative vote, on call of the roll, by two-thirds of the members of said council, but attempted to establish and adopt said ordinance in disregard of rules twenty-nine and thirty-one; that said defendants have not, nor has either of them, any legal title or right to the office of councilman of said city, because he says: (4) The defendants were elected or appointed by said council before said ordinance dividing said city into four wards was signed by the mayor of said city. (5) The defendants were elected or appointed by said common council, took the oath of office, and their seats as such councilmen before said council caused notice of its action in passing said ordinance to be given by three publications for three successive weeks, one month before an election, in two papers of opposite politics published in said city. (6) The common council had no authority to fill vacancies occasioned by their creation of new or additional wards. (7) Under the statutes of Indiana, the only method of filling vacancies occasioned by the creation of new or additional wards in cities is by special election, called for that purpose by the common council of such cities. Prayer that said offices be declared vacant, etc.

Appellants' demurrer to the information was overruled. They then filed an answer, to which appellee's demurrer

was sustained.    Appellants elected to stand upon their answer, and, refusing to plead further, judgment was rendered ousting them from the offices.    The overruling of the demurrer to the complaint, and the sustaining of the demurrer to the answer, are assigned as error.

This opinion may be much abridged by eliminating certain questions that arise upon the face of the complaint, which have been heretofore decided, or been waived or conceded by appellee to be untenable.    These are as follows: (1) The authority of the common council to divide the city into wards, and to create new and additional wards, under §3470 Burns 1901, is taken as granted, because not called in question.    (2) When, in such division of a city, a new and additional ward is established, and vacancies in the office of common council thus result, the common council have the power to fill such vacancies by appointment. §3484 Burns 1901; *Landes* v. *Walls, ante,* 216.    (3) The publication of notice of the adoption of the ordinance, required by §3471 Burns 1901, does not postpone the taking effect of the ordinance until after the time fixed for publication has expired.    *Landes* v. *Walls, supra.*    (4) It is alleged in the complaint that the common council of the city was composed of six members, and that at the time the ordinance redistricting the city was voted upon all members of the council were present, and that three voted for the ordinance and three refused to vote.    Appellee concedes that councilmen present and refusing to vote are to be deemed as voting in the affirmative, and that the question must be treated as if the ordinance received the unanimous vote of the council.    See, also, *Rushville Gas Co.* v. *City of Rushville,* 121 Ind. 206, 6 L. R. A. 315, 16 Am. St. 388.

The validity of the ordinance is further questioned upon two grounds:    (1) For failure to comply with the requirements of §1 of the act of 1899 (Acts 1899, p. 125); and (2) for a violation of the rules prescribed by the council for its government.

I.   Section 1 of the act of 1899, *supra,* is as follows: "That in all incorporated cities which had a population of less than 30,000 inhabitants, according to the census of 1890, every ordinance of the common council, shall immediately upon its enrollment, attestation and signature of the clerk, be presented by him to the mayor, and a record of the time of such presentation made by the clerk.   If the mayor approves it, he shall sign it and it shall become a law; if he does not approve it, he shall return it to the clerk with his objections in writing within ten days after receiving it and the clerk shall present the same to the common council at its next meeting.   It shall be the official duty of the mayor to express in writing his disapproval as hereinbefore provided.   If for any reason within the ten days, the mayor fails to disapprove the same in writing, it shall be deemed equivalent to approval and in all cases of disapproval by the mayor, the same shall not become a law unless the body in which the measure originated within thirty days after the time named by the mayor's action, again pass the same by a majority vote of the members of the common council elect."

Prior to the adoption of this act of 1899 the only statute relating to the record or other authentication of an ordinance of a city of this class was the following, which is still in force:   "All by-laws and ordinances shall, within a reasonable time after their passage, be recorded in a book kept for that purpose, and shall be signed by the presiding officer of the city, and attested by the clerk.   On the passage or adoption of any by-laws, ordinance or resolution, the yeas and nays shall be taken and entered on the record."   Acts 1867, p. 72, §78, §3534 Burns 1901.

It will be observed that the act of 1867 provides that within a reasonable time after their passage all ordinances shall be recorded, signed by the presiding officer of the city, and attested by the clerk.   These things however have been adjudged directory only, and a failure to observe them will

not invalidate an ordinance.  *Martindale* v.  *Palmer,* 52 Ind. 411; *Shea* v. *City of Muncie,* 148 Ind. 14, and authorities cited.

It is manifest that the legislature in the enactment of 1899 made no attempt to avoid the construction put by this court upon the act of 1867, *supra,* relating to the registration and signing of ordinances, or make any change with respect to the mode of authentication, or preservation of such enactments.  In the act of 1899, *supra,* it is expressly provided that an ordinance may become a valid law without the signature of the mayor in two ways:  (1) By the mayor, for any reason, failing for ten days to sign it; and (2) by the council passing the same over his veto.  Under this act the only virtue imparted by the mayor's signature of approval is to give immediate effect to the ordinance, and waive his right of veto.  When these two statutes are read together, as they should be, it becomes clear that the only purpose of the General Assembly, in the passage of the act of 1899, was to confer the veto power upon mayors. This is shown by the title of the act, which must be accepted as indicating and defining the subject legislated upon.  It is as follows:  "An act providing that mayors of incorporated cities having less than 30,000 inhabitants according to the census of 1890, have the power to veto ordinances and resolutions passed by the common councils, and repealing all laws in conflict, and declaring an emergency."  Acts 1899, p. 125.

If required to construe the act as abridging existing powers of the common council, or as making the previous registration and signing of an ordinance by the mayor essential to the validity of an ordinance, it should be held unconstitutional, because the subject is not embraced within the title.  Art. 4, §19, Indiana Constitution.  So it is plain that the legislation of 1899 did not affect the powers of common councils to pass ordinances, nor the duties directed of city officers with respect to the enrolling, attesting,

and signing of the same, except to invest the mayor with the right of veto. Entering, then, the wider field of the law, we find that it is an ancient rule in the exposition of statutes that when duties are imposed upon public officers which affect the rights and duties of others, and time of performance is stated in such language as does not deprive the officer of the power to perform after the time prescribed, such statute, in relation to the time for the discharge of such duties, must be regarded as directory, and not as mandatory, or as essential to the validity of the proceeding. *Martindale* v. *Palmer,* 52 Ind. 411; *Jones* v. *Carnahan,* 63 Ind. 229; *Sackett* v. *State, ex rel.,* 74 Ind. 486; *Wampler* v. *State, ex rel.,* 148 Ind. 557, 38 L. R. A. 829; Smith's Comm., §§670, 674; Sutherland, Stat. Const., §448.

In the Martindale case it was held that a contract for street improvement was valid though made before the ordinance authorizing it was signed by the mayor.

In the Jones case an execution was sustained that was issued upon a judgment of the circuit court before the same was recorded, read in open court, and signed by the judge, as required by the statute.

In the Sackett case the election of a school trustee by the city council at a date subsequent to the time fixed by the statute was held good.

In the Wampler case the same principle was applied to the election of a county superintendent by the township trustees.

All these cases proceed upon the theory that statutes prescribing a time and manner of doing an official act, without denying the right to do it at some other time, must be held directory merely, unless the language employed or character of the act to be done forbids such a construction.

In §670 Smith's Comm., the author says: "Where a statute directs a person to do a thing in a certain time, without any negative words restraining him from doing it

afterwards, the naming of the time will be considered as directory to him, and not as a limitation of his authority."

Sutherland, in §448, *supra,* says: "The cases universally hold that a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory, unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered as a limitation of the power of the officer."

The law looks at the substance, and not at the shadow of things. In the passage of an ordinance the essential thing is that it receives the requisite number of votes at a proper meeting of the council. And in ordinary cases, and in the absence of a specific mandate, the law will not suffer the power of the council to pass an ordinance, or the rights of one springing from such an act, to be set at naught by the neglect or failure of an officer of the city to perform some ministerial duty in relation thereto, strictly within the time and manner directed of him by the statute. There is no pretense here that the ordinance was not completed in every respect as required by the statute. The only complaint is that it was not orderly done. The averments of the information are, in effect, that the ordinance received the unanimous vote of the common council elect; "that the mayor * * * declared the same adopted, and before the adjournment of said meeting attached his signature thereto;" "that the same was not enrolled, attested, and signed by the clerk before being signed by the mayor;" "that the defendants were appointed by said council before said ordinance was signed by the mayor of said city."

If the council had the authority to pass the ordinance, and it did pass it at a regular meeting, by a unanimous vote of the councilmen elect upon a call of the yeas and nays, as is conceded by appellee, what difference can it make to any member of the public, represented by the

relator, whether the steps leading up to appellants' appoint-
ment were taken precisely in the order contemplated by
the statute or in somewhat different order? It is nowhere
averred that the ordinance was· not recorded in the book
kept for that purpose, and attested and signed by the clerk
and mayor after its passage, and before the meeting ad-
journed; and, presuming that public officers do their duty,
we must presume that these things were done. And if,
while the clerk was engaged in enrolling the ordinance,
in the interests of time and the dispatch of business, the
council proceeded to and did elect the appellant to the va-
cancies created, and the ordinance was passed, registered,
attested, and signed by the clerk and mayor, and appellants
appointed at the same meeting, and all was accomplished
before the meeting of the council adjourned, we perceive no
such fault or irregularity in the proceeding as will annul the
ordinance or vitiate the appointment of appellants there-
under.

II.    The further point is made that the redistricting
ordinance is void for failure of the council to observe, in
its passage, rules twenty-nine and thirty-one adopted by
that body for its government. These rules are: "29. The
general rules ·of parliamentary law, so far as the same are
applicable, are to be considered the rules of the common
council, unless the same conflict with any of the rules here-
in prescribed." "31. No rule shall be suspended, except
by an affirmative vote on call of the roll by two-thirds of the
members of the council."

It is averred in the complaint that §18, article 4, of the
state Constitution, which requires that.every bill shall be
read by sections on three several days, unless the several
readings are dispensed with by a two-thirds vote, is a gen-
eral rule of parliamentary law; and from this premise it is
argued that the single reading and vote upon the ordinance,
without a suspension of the rule, was a nullity, and im-

parted no vitality to the act.   In support of his position the relator cites said section of the state Constitution, and Rules and Practice of National House of Representatives by Hinds, pp. 137, 138.

Parliamentary law as generally understood means "the rules and usages of parliament, or of deliberative bodies." Webster's Int. Dict.   "The recognized usages of parliament and legislative assemblies by which their procedure is regulated." Bouvier's Law Dict.   Thus it appears that a rule of parliamentary law is a rule created and adopted by the legislative or deliberative body it is intended to govern.   It is, therefore, quite different from a provision of the Constitution which the people have set up as defining and limiting the powers and duties of the legislature.   The former is subject to revocation or modification at the pleasure of the body creating it, while the latter is the law of its being, and prescribes the terms upon which it has power to act at all.   The averment, therefore, that §18, article 4, of the Constitution, "is a general rule of parliamentary law," must be regarded as a conclusion of the pleader, in the absence of an averment that the council had adopted it as one of its governing rules.

Another view:   The language of rule twenty-nine is: "The general rules of parliamentary law, so far as applicable, are to be considered the rules of the common council." Who but the council themselves are to determine what rules are general rules, within the meaning of their rule twenty-nine?   And who but they are to determine what parliamentary rule is applicable to the business before them?   Outside the things enjoined by the statute, city councils are authorized to conduct their proceedings according to rules of their own adoption, keeping in view the public interest, and the faithful discharge of their duties; and in this case, in the absence of a statute, or of a rule duly established, requiring it, we can not say as a matter of law that it was incumbent

upon the council to read the questioned ordinance three times on three several days before its final passage, or to say that a single reading was insufficient.

For these reasons we are of opinion that the information does not state sufficient facts to entitle appellee to judgment against appellants. The judgment is therefore reversed, with instructions to sustain appellants' demurrer to the information.

Jordan, J., did not participate in the decision of this case.