ALLEN CO. DEPARTMENT OF PUBLIC WELFARE *v.*
BALL MEMORIAL HOSPITAL ASSOC., INC., ET AL.

[No. 269-S-30. Filed November 20, 1969.]

*Hunt, Suedhoff & Wilks, Robert H. Berning,* Fort Wayne, for appellant.

*Bracken, DeFur, Voran & Hanley, Marshall E. Hanley,* Muncie, for appellee, Ball Memorial Hospital.

*Pieroni, Hynes, Dixon & Marsh, Mario Pieroni,* Muncie, for appellee, Delaware County Department of Public Welfare.

*Shine & Shine,* Anderson, for appellee, Madison County Department of Public Welfare.

ARTERBURN, J.—This is an action for the determination of liability for the costs of hospital care for an indigent person, brought by the appellee, Ball Memorial Hospital Association, Inc., against appellant, Allen County Department of Public Welfare, and appellees, State Department of Public Welfare, Madison County Department of Public Welfare and Delaware County Department of Public Welfare.

The State Department of Public Welfare held a hearing on the matter, as provided for in Burns' Ind. Stat. Anno. § 52-1147, 1969 Cum. Supp., and entered the following decision:

"Chapter 172 of the Acts of 1965 provides in part, that in the event any indigent person is injured in any county of this State, any hospital to which such indigent is admitted for care *shall* within seventy-two hours, not counting holidays or week ends, report such matter to the Department of Public Welfare of the county in which the person is injured. In this case Robert Carl Owens, Sr. was admitted to the Ball Memorial Hospital on Saturday, May 7, 1966, and notice was *mailed* to the Delaware County Department of Public Welfare on Thursday, May 12, 1966.

"On the basis of the above statement of facts it is the decision of the State Department of Public Welfare that not counting Saturday, May 7 and Sunday, May 8, the notice was not given within the seventy-two hours as provided in said Chapter 172 of the Acts of 1965, and that, therefore, no

county welfare department is liable for the cost of this care under the said Chapter 172 of the Acts of 1965."

Upon a petition for review of this ruling, the Delaware Circuit Court reversed said ruling and entered judgment for appellee Ball Memorial Hospital Association, Inc., finding appellant, Allen County Department of Public Welfare, liable for the costs of the hospital care. This appeal was then perfected by the Allen County Department of Public Welfare from that judgment.

The facts are these: On May 7, 1966, one Robert Carl Owens, Sr. was involved in an automobile accident in Delaware County and was admitted to Ball Memorial Hospital on that day. Mr. Owens was unconscious when he arrived at the hospital and remained unconscious until May 21, 1966. He remained in the hospital until July 3, 1966. The reasonable cost for this period of hospitalization and care was four thousand two hundred seventy-two dollars ($4,272.00). It further appears from the evidence before us that Ball Memorial Hospital (appellant) consulted with Mrs. Owens, the wife of Robert Carl Owens, Sr., on May 7, 1966, to determine whether or not there was insurance to pay for the hospital expenses. Mrs. Owens was at that time unable to indicate whether there was insurance covering the hospital expenses. It was not until May 12, 1966, that Ball Memorial Hospital was again able to locate Mrs. Owens and she then informed the hospital that there was no insurance. On May 12, 1966, the appellee-hospital mailed a notification of Mr. Owens' indigency to the Delaware County Department of Public Welfare.

The indigency of Mr. Owens and the finding that at the time of the accident he was a resident of Allen County are *not* being disputed. The sole issue raised is whether appellee, Ball Memorial Hospital, under the circumstances duly notified the department of public welfare of the county in which the indigent was injured "within

seventy-two hours," as required by Burns' Ind. Stat. Anno. § 52-1146, 1969 Cum. Supp. If this inquiry is answered in the affirmative, then pursuant to said statute the appellant, Allen County Department of Public Welfare, would be liable for the hospital costs as the resident county of the indigent.

Burns' § 52-1146, *supra*, reads as follows:

"*Indigents—Admittance to hospital of injured or ill non-residents—Notification of county department of public welfare—Investigation—Report by department—Cost of care to county of residence—Exception—'Indigent person' defined.*—On and after the effective date of this act [§§ 52-1146—52-1150], in the event any indigent person is injured or in the event any indigent person who is a nonresident of this state becomes ill in any county of this state, *any hospital to which such indigent person is admitted for care or any physician furnishing medical services to such indigent person shall within seventy-two* [72] *hours, not counting holidays or weekends, report such matter to the department of public welfare of the county in which the person is injured* or becomes ill. The department shall promptly complete an investigation to determine the legal residence, establish need and determine eligibilty for the payment of the cost of medical or hospital care for such indigent person and shall promptly report its findings to the reporting hospital or physician.

"The cost of any such medical or hospital care arising out of such illness or accident shall be borne by the county of the legal residence of the indigent person: Provided, That in situations where it is determined that the indigent person has no legal residence in any county of this state or where the legal residence of the indigent person is not determined, the cost of any such medical, hospital care and the cost of transportation to the place of treatment arising out of the illness or accident shall be borne by the county in which the indigent person is injured or become[s] ill. The cost of the medical, hospital care and the cost of transportation to the place of treatment shall be paid out of any money appropriated to the county welfare department. For the purpose of this act the term 'indigent person' shall mean a person without financial resources to pay for such medical or hospital care. [Acts 1965, ch. 172, § 1, p. 302.]" (Emphasis added.)

The appellant, Allen County Department of Public Welfare, contends that the hospital was required to notify the county

welfare department within seventy-two hours after the admission of Mr. Owens into the hospital as a condition precedent to recovery, and this the hospital failed to do. The appellee-hospital, on the other hand, urges that the seventy-two hours should not begin to run until the hospital had reasonable cause to believe that Mr. Owens was indigent, which occurred on May 12, 1966, when it was learned Mr. Owens had no insurance; also appellee urges that in the alternative the statute is merely directory.

In construing the statute before us we must be mindful that the intent of the legislature controls. In this situation our judicial function is best discharged by an honest and earnest desire to ascertain and effectuate that intent. *State* v. *Gilbert* (1966), 247 Ind. 544, 219 N. E. 2d 892.

The meaning and intention of the legislature are to be ascertained not only from the phraseology of the statute but also by considering its design, its nature and the consequences that flow from the various interpretations.

We are of the opinion that the statute in question is merely directory as to the three day time period. We reach this conclusion after a careful analysis of not only the statute here presented but of the statute it replaced and the supplemental legislation which constitutes our welfare system.

Our role in construing this statute is well stated in Crawford, *Statutory Construction* § 261, p. 516:

"In other words, the court will determine whether a particular provision must be followed. It will do this, even though the statute on its face is clear, just as it will determine whether an unambiguous statute will include or exclude a given case from its operation if construed strictly or liberally. . . . Both are used to avoid a strict and literal adherence to the letter and form of a statute in order that the statute may produce no absurd or mischievous results. . . . And, of course, the justification for this attitude is found in the maxim that it is presumed that the legislature does not intend to enact a law which will operate absurdly or mis-

chievously. Consequently, in avoiding such results, the court is actually giving effect to the legislative intent."

Thus, the question is essentially one of application. The point raised is what shall be the consequence of a deviation.

The distinction between directory and mandatory provisions in a statute is that violation of the former is not usually fatal to the procedure, while a departure from the latter is fatal to any proceeding to obtain the benefit of the statute. In this regard the words "shall" and "may" become pertinent. The general rule in this state, and in most other jurisdictions, is that the words "shall" and "may" will sometimes be read interchangeably to prevent defeat of the legislative intent. It is stated at 26 I. L. E., *Statutes*, § 135, p. 353:

> "The word 'shall' may be construed to mean 'may' to prevent defeat of the legislative intent, and the word may be held to be merely directory when no advantage is lost, when no right is destroyed, or when no benefit is sacrificed, either to the public or to any individual, by giving it that construction."

Also, the rule is stated at 50 Am. Jur., *Statutes*, § 23 to be:

> "In many cases, statutory provisions as to the precise time when a thing is to be done are not regarded as of the essence, but are regarded as directory merely. This rule applies to statutes which direct the doing of a thing within a certain time without any negative words restraining the doing of it afterwards." See also: *Wysong* v. *Automobile Underwriters* (1933), 204 Ind. 493, 184 N. E. 783; *Landes* v. *State* (1902), 160 Ind. 479, 67 N. E. 189.

All laws are mandatory in the sense that a duty of obedience is imposed, but it does not follow that every slight departure is fatal where the act is merely procedural and does not go to the merits. The basic test, we believe, to determine whether the requirement is essential or not, is to consider the consequences of the failure to follow the statute and, in this regard, other possible interpretations.

Other possible interpretations of the statute lead to absurd results. To hold that the three day period commences upon

admission to the hospital and no notice can thereafter be given, irrespective of the particular circumstances of the case, would place an unbearable burden on the welfare department. For then a hospital would be well advised to notify the welfare department as to each and every patient admitted to the hospital for fear of ascertaining, more than three days after admission, the patient's inability to pay. Such forced notification in every case would cause an immense increase in clerical work and defeat the real purpose of notice under the statute. What of the patient whose resources are exhausted after several days in the hospital? Must he be excluded because seventy-two hours have elapsed?

The present situation vividly points out the harshness and mischief caused by strict adherence to a rule that would preclude notification after three days, irrespective of the circumstances. Here the patient was unconscious when he entered the hospital on May 7, 1966, and remained unconscious until May 21, 1966. The hospital had no reason to believe that the county department of public welfare would have to be resorted to for payment until May 12, 1966, when Mrs. Owens determined her husband had no insurance to cover the hospitalization. On that day the appellee-hospital notified the appellant.

The obvious purpose of the notice provision is to afford the welfare department of the county an adequate opportunity to investigate and determine eligibility. This purpose was fully accomplished by the notice given, which was prompt under the circumstances.

We are fully cognizant of the fact that the doctrine of construing a statute to be directory should not be carried beyond the line of sound discretion. But there exists a pressure to adopt and utilize the doctrine to free the law from harshness and absurdity and consequently effectuate the legislative intent. Of course, a more careful preparation of statutes would be the best remedy for the situation. The legislature could

provide that failure to meet the mandates of a statute would or would not invalidate the act performed under such statute. This would remove the problem from the courts.

We hold that inasmuch as the statute contains no negative or prohibitive words nor provides for penalties on the consequences of notice given beyond the seventy-two hour period, it is directory with respect to the time limitation.

We further hold that where the facts show notice was given promptly, as soon as the hospital had a reasonable opportunity to ascertain the facts under which notice should be given, it has performed its responsibility under the statute, and should not be defaulted or penalized, as suggested by appellant in this case. We believe this best effectuates the legislative intent by eliminating the mischievous and harsh results that accompany other possible interpretations.

The judgment is affirmed.

Hunter and Givan, JJ., concur; DeBruler, C.J., and Jackson, J., concur in result.

NOTE.—Reported in 252 N. E. 2d 424.