Edward **SHARTON, Wayne Latham, Jack Sanders, Hugh McCann, as Members of the Sheriff's Merit Board of Clay County, Appellants (Petitioners Below),**

v.

**Raymond T. SLACK, William Tozer, Hubert Williams, Marlk L. Dierdorf, Herman Buckalew, Richard Burger, John Ringo, As Members of the County Council of Clay County, Indiana, Appellees (Relators Below).**

No. 1–781A218.

Court of Appeals of Indiana, Second District.

April 19, 1982.

David F. Truitt and John W. Donaldson, Donaldson & Andreoli, Lebanon, George N. Craig, Craig & Craig, Brazil, for appellants.

William G. Brown, Brazil, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Members of the Sheriff's Merit Board of Clay County (the Merit Board) appeal from the denial of their Petition for Mandate, alleging error in the Clay Circuit Court's finding that members of the County Council of Clay County (the County Council) acted within their discretion when they failed to allocate funds for a county police officer's pension trust fund.

We reverse and remand.

## FACTS

The stipulated facts indicate that the Merit Board presented requests for the funding of a retirement plan in its 1980 and 1981 budget proposals to the County Council. Presented with a general plan prepared by an actuarial firm, the County Council refused to allocate any funds for the establishment of a pension program for county police officers.

The Merit Board then filed its Petition for Mandate, contending that Ind.Code 17–3–14–11 (1976) and related statutes [1] required the County Council to appropriate money for the sheriff's department's contribution to the pension trust fund. The trial court adopted the County Council's interpretation of the statute when it denied the Merit Board's request for writ of mandate and found that the County Council's members acted within their discretion when they refused to allocate the sought-after funds.

## ISSUE

The Merit Board presents one issue for our determination:

Does IC 17–3–14–11 mandate the County Council to allocate proper sums of money for the sheriff's department's contribu-

1. Repealed by Acts 1981, P.L. 309, § 115 (currently codified at IC 36–8–10–12 to –19 (Supp. 1981)).

tion to a county police officer's pension trust fund?

## DECISION

CONCLUSION—The language of IC 17-3-14-11 is mandatory. The County Council may not refuse to allocate funds for the sheriff's department's contribution to an actuarially sound pension trust fund plan.

The statutory provisions in effect at the time this action was brought fell under the general provisions establishing sheriff's merit boards in Chapter 14 of Title 7, Article 3. Included in Chapter 14 were definitions and guidelines for funding a retirement plan "established and operated for the exclusive benefit" of county policemen and county sheriffs. IC 17-3-14-10 (Supp. 1980). The statute, IC 17-3-14-11 (1976), authorizing the sheriff's department to establish and operate the trust fund is the basis for the dispute in this case:

> Authority is hereby granted to the [sheriff's] department to establish and operate an actuarially sound pension trust as hereinbefore defined, and to make the necessary annual contribution in order to prevent any deterioration in the actuarial status of the trust fund. *Contributions by the department shall be provided in the general appropriation to the department.*

(emphasis supplied) (hereinafter referred to as Section 11).[2] Does "shall" mean "shall"

in an obligatory sense or in a permissive sense—that is the question? If it is mandatory as the Merit Board maintains, the County Council has no discretion; it must supply the funds for a pension trust, and the trial court erred in its judgment.

Although all of Chapter 14 was repealed in 1981, the legislature has seen fit to preserve these benefits for county police officers in new Title 36.[3] The reenactment of statutory provisions with language substantially similar to that before us for review[4] makes our determination particularly relevant in light of the legislature's continued commitment to pension plans for public servants.[5]

It is significant that Chapter 14 itself did not establish a pension trust fund or a concurrent retirement plan, but merely authorized the sheriff's department to do so. Moreover, the legislature clearly anticipated that the sheriff's department would make contributions to the fund when it provided that "[j]oint contributions shall be made to the trust fund by the [sheriff's] department and by such employee beneficiary through authorized monthly deductions from his salary or wages." IC 17-3-14-10(g)(2) (Supp. 1980). However, the County Council would have us interpret Chapter 14 in such a way as to place the ultimate fate of a retirement pension plan in the hands of the County Council. Stressing that county councils *generally* have the power and authority to determine sheriff's department salaries and

**2.** Subsequent provisions of Chapter 14 authorized the sheriff's department to establish and operate a death benefit program, IC 17-3-14-12 (Supp.1980), a disability program, IC 17-3-14-13 (Supp.1980), and a dependent's pension benefit program, IC 17-3-14-14 (Supp.1980). Although both parties fail to mention it in their briefs, it appears that Merit Board's proposed retirement plan included these subsidiary benefits. *Record* at 108. The statutory provisions for these plans differ from those set out for the general retirement plan in that the sheriff's department is authorized to fund the subsidiary plans "by the creation of a reserve account or by obtaining appropriate insurance coverage, or both." IC 17-3-14-12 to -14. However, Chapter 14 provides that the supplementary benefits may be operated as one fund under the terms of a supplementary trust agreement. IC 17-3-14-15 (Supp.1980). Once again, the stat-

ute provides that contributions by the sheriff's department to the trust fund "shall be provided in the general appropriations to the department." *Id.* We are not called upon to interpret that part of Chapter 14 providing for these subsidiary benefit plans because both parties have confined their arguments to the funding of a pension plan under IC 17-3-14-11.

**3.** See n. 1 *supra.*

**4.** *E.g.,* "Joint contributions *shall* be made to the trust fund by the department through a general appropriation provided the department . . . ." IC 36-8-10-12 (Supp.1981) (emphasis supplied).

**5.** *See also* IC 36-8-6-1 to -8-18 (Supp.1981) (providing for pension and disability funds for city police officers and firefighters).

budgets, IC 17–3–14–3 (1976), the County Council concludes it may properly refuse to allocate any funds for the department's contribution to the retirement plan.

■ One elementary rule of statutory interpretation is that statutes dealing with a subject in a detailed or specific manner will control over statutes dealing with the same subject in general terms when the two cannot be harmonized. *Indiana Waste Systems, Inc. v. Board of Commissioners*, (1979) Ind.App., 389 N.E.2d 52; *Glick v. Department of Commerce*, (1979) Ind.App., 387 N.E.2d 74, *trans. denied*. The County Council correctly points to Section 3 of Chapter 14 granting the County Council general power and authority over the sheriff's department budget. However, Section 11, the statute in question, dealt with a specific portion of the department's budget, i.e. its contributions to the pension trust fund. Therefore, the specific must prevail over the general. And so we must determine whether the use of the word "shall" in the specific statute, Section 11, should be construed in a mandatory fashion so as to override the general language of IC 17–3–14–3.

■ Ordinarily, the term "shall" in a statute is presumed to be used in a mandatory or imperative sense. *State ex rel. Simpson v. Meeker*, (1914) 182 Ind. 240, 105 N.E. 906; *Brighton v. Schoffstall*, (1980) Ind.App., 401 N.E.2d 84; *City of Indianapolis v. Ingram*, (1978) Ind.App., 377 N.E.2d 877. This presumption controls unless it appears from the context or the manifest purpose of the act that the legislature intended a different construction. *Allen County Department of Public Welfare v. Ball Memorial Hospital*, (1969) 253 Ind. 179, 252 N.E.2d 424; *Meeker, supra*. "The basic test ... to determine whether the requirement is essential or not, is to consider the consequences of the failure to follow the statute and, in this regard, other possible

interpretations." *Ball Memorial Hospital*, 253 Ind. at 185, 252 N.E.2d at 428. The effect of construing Section 11 in such a manner as to impose a discretionary power in the County Council is to emasculate the authority specifically given the Merit Board to establish a pension fund. Such a result would be particularly incongruous in light of the wording of Section 11 and the provisions surrounding it. The Delphic words of the statute are that "[c]ontributions ... shall be provided in the general appropriation...."

■ Moreover, IC 17–3–14–10(c) provides that the assets of the pension trust "shall consist of voluntary contributions from the department ...." And, as indicated above, a limitation is imposed upon the pension trust agreement such that joint contributions "shall be made to the trust fund by the [sheriff's] department" and by employee beneficiaries. IC 17–3–14–10(g)(2). We would be reluctant to conclude that the legislature intended to give the County Council such unbridled discretion as to render these provisions ineffective. It is not to be presumed that the legislature intended its enactments to have no effect. *Wilson v. Stanton*, (1981) Ind.App., 424 N.E.2d 1042.[6]

■ We are unable to find any pertinent provision which would convince us that Section 11 was intended to be anything other than mandatory. For example, IC 17–3–14–10(g)(4) does not require a discretionary interpretation of the County Council's allocation powers. That subsection provides for termination of the pension trust fund in the event that the sheriff's department fails for three successive years to make contributions sufficient to prevent any deterioration in the actuarial status of the fund. Such a provision for termination may reasonably be construed as allowing for either (1) incompetent or mistaken management of the fund or (2) a desire on the part of the

---

**6.** One alternative interpretation of IC 17–3–14–11 would, in a similar fashion, render its language ineffective. Section 11 could be read to mean that the sheriff's department is precluded from using any funds for its contribution other than those provided for in the County Council's

general appropriation. Given that all sums of money necessary for the county sheriff's budget come from specific appropriations made by the County Council, such an interpretation of the statute would be redundant and meaningless.

department or its employees to terminate and wind down the pension program.

Finally, we observe that in the statutory scheme the sheriff's department is neither given unlimited discretion nor faced with a responsibility for which it is provided no direction. In addition to the statutory guidelines pronounced in Chapter 14, that chapter further provides that the actuarial soundness of the pension trust must be approved by the insurance department of the State of Indiana. And, the operation of the fund is open to the insurance department's inspection at all times. IC 17–3–14–16 (1976). It appears that the legislature has taken all precautions in assuring that the sheriff's department presents a sound plan for the County Council's appropriation.

■ One last consideration plays a part in the disposition of this case. When a statute directs the performance of an act which is for the benefit of the citizens or the public, it is normally to be construed as mandatory. *Zorn v. Warren-Scharf Asphalt Paving Co.,* (1908) 42 Ind.App. 213, 84 N.E. 509. Moreover, case law establishes that pension statutes are in the public interest and are therefore entitled to a liberal construction in favor of those intended to benefit thereby. *Schock v. Chappell,* (1952) 231 Ind. 480, 109 N.E.2d 423; *State ex rel. Clemens v. Kern,* (1939) 215 Ind. 515, 20 N.E.2d 514; *Bobson v. City of Mishawaka,* (1978) Ind.App., 383 N.E.2d 484, *trans. denied; Kilfoil v. Johnson,* (1963) 135 Ind.App. 14, 191 N.E.2d 321. This is yet another reason for construing the language of Section 11 as peremptory.

Whatever mischief may result from taking control of the establishment of police pensions away from county councils is not for us to consider. The genie, if genie it be, is out of the bottle. We can only conclude that the wording of the specific statute involved and the entire statutory scheme is such that we must interpret the legislature's intent to be that police agencies can establish pension trusts and county councils must appropriate the funds if an actuarially sound plan is presented.

The County Council argues alternatively that no such plan was ever presented for its consideration. Its position is that if it were required to allocate funds, the Merit Board presented a mere outline of a proposed pension plan upon which the County Council could not conscientiously act. Although conflicting evidence was presented to the trial court, the trial judge failed to reach this issue in his findings. It is true that the Council's obligation to appropriate runs only to an *actuarially sound plan* and a mere outline of a proposed plan is not sufficient to trigger mandatory appropriation. Nevertheless, because there was some conflicting evidence presented, and because the trial judge failed to resolve the issue in light of his inaccurate interpretation of IC 17–3–14–11, the judgment must be reversed for this error of law and remanded for a determination of the factual issue as to an actuarially sound plan. *See Brown v. Poulos,* (1980) Ind.App., 411 N.E.2d 712; *Citizen's National Bank v. Harvey,* (1976) 167 Ind.App. 582, 339 N.E.2d 604.

Reversed and remanded for further proceedings consistent herewith.

SULLIVAN and SHIELDS, JJ., concur.