## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 22 2020, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jarred L. Eib
Marion, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jarred L. Eib,

*Appellant-Petitioner,*

v.

State Employees' Appeals Commission, Indiana Department of Child Services,

*Appellees-Plaintiffs*

September 22, 2020

Court of Appeals Case No.
19A-MI-2633

Appeal from the Grant Superior Court

The Honorable Jeffrey D. Todd, Judge

Trial Court Cause No.
27D01-1809-MI-157

**Altice, Judge.**

## Case Summary

Jarred L. Eib was terminated from his employment as a staff attorney with the Indiana Department of Child Services (DCS). Eib appealed his dismissal to DCS, then the State Personnel Department (SPD), and finally to the State Employees' Appeals Commission (the SEAC). After the SEAC granted summary judgment in favor of DCS, Eib, pro se, sought judicial review. The trial court affirmed the decision of the SEAC, agreeing with its determination that Eib was an unclassified employee and that he had not established that his dismissal contravened public policy. Eib now appeals, presenting several issues for our review:

> 1. Did the SEAC err in concluding that Eib was not entitled to summary judgment or default judgment when SPD did not issue its decision until after the statutory period for such had passed?
>
> 2. Did the SEAC err in failing to disqualify the administrative law judge (ALJ) presiding over this matter?
>
> 3. Did the SEAC err in concluding that Eib was an unclassified employee?

We affirm.

## Facts & Procedural History

Eib was hired as a staff attorney for DCS on May 20, 2013. On January 6, 2017, DCS terminated Eib's employment due to "ongoing deficiencies in meeting [his] professional work competencies and expectations; unacceptable

behaviors and in accordance with [SPD] and DCS policies and procedures."
*Appellant's Appendix Vol. 2* at 13. In the termination letter to Eib, DCS noted
that his dismissal was in accordance with Ind. Code § 4-15-2.2-24,[1] which
pertains to dismissal of an employee in *unclassified* service.

[4] On February 2, 2017, Eib, pro se, filed a complaint with DCS pursuant to the
procedure set out in I.C. § 4-15-2.2-42(a). Eib alleged that as an employee of
DCS, he was in *classified* civil service and, as such, could only be terminated for
just cause and was entitled to pre-deprivation proceedings prior to dismissal.
Eib maintained that failure to provide him with such denied him due process.
On February 15, 2017, DCS denied Eib's complaint, explaining that his
position as a DCS staff attorney did not meet the standards for classified service
and that, as an employee in the unclassified service, he was required to show
that the reason for his dismissal contravened public policy, which he did not do.

[5] On February 22, 2017, Eib appealed DCS's decision to SPD. In a letter dated
March 29, 2017, which was five days past the statutory period, SPD denied
Eib's complaint. SPD based its denial on Eib's status as an employee in the
unclassified service and the fact that his "[d]ismissal for poor performance d[id]
not contravene public policy." *Appellant's Appendix Vol. 2* at 22.

---

[1] I.C. § 4-15-2.2-24(a) provides that "[a]n employee in the unclassified service is an employee at will and
serves at the pleasure of the employee's appointing authority." Subsection (b) provides that "[a]n employee
in the unclassified service may be dismissed . . . for any reason that does not contravene public policy."

On March 29, 2017, Eib sought administrative review by filing a complaint with the SEAC. In addition to arguing that he was a classified employee and that he was denied statutory protections for classified employees, Eib also argued that he was denied due process when SPD failed to comply with the procedure set forth in I.C. § 4-15-2.2-42(e) by failing to respond to his complaint within the allotted thirty-calendar-day time limit.

On April 5, 2017, an ALJ for the SEAC issued a "Notice of Proposed Dismissal for Lack of Jurisdiction under Ind. Code § 4-15-2.2-42(e)". *Appellant's Appendix Vol. 2* at 26. The ALJ rejected Eib's claim that he was a classified employee entitled to a pre-deprivation hearing. The ALJ noted that while DCS employees "would normally be classified," Eib's position as a staff attorney fell within an exception to state classified service in that "a substantial part of [Eib's] duties involve providing meaningful input on the development of policy goals and implementation of policy," *see* I.C. § 4-15-2.2-21(b)(3)(C), and that other assignments of a DCS staff attorney would have required Eib to follow DCS policies. *Appellant's Appendix Vol. 2* at 28. The ALJ therefore concluded that Eib was "rightly identified as an unclassified employee." *Id*. Because Eib did not allege in his complaint that he was terminated in violation of Indiana public policy, the ALJ found that Eib had not established a claim over which the SEAC had statutory or subject matter jurisdiction. The ALJ afforded Eib fifteen days in which to amend his complaint to address the identified jurisdictional defect. The ALJ further stated: "If no appropriate motion or amended complaint is timely filed showing jurisdiction exists, the [ALJ] will

enter a final order of dismissal." *Id*. at 29. Regarding Eib's timeliness challenge, the ALJ, while acknowledging that SPD's response was "beyond the deadline," surmised that "SPD only misses such deadlines when it is trying to settle such matters" and then assumed such to be the reason for the delay herein. *Id*. at 26.

[8] On April 20, 2017, Eib filed an amended complaint with the SEAC. On the same day, he also filed a brief and motion in opposition to dismissal and a motion for disqualification of the ALJ. The alleged basis for disqualification was that in the notice of proposed dismissal, the ALJ "acted in a representative capacity on behalf of Respondent by asserting a legal argument" that had not been raised by DCS. *Id*. at 73. Eib also claimed that the ALJ improperly excused the untimely SPD response based on his assumption that the parties were attempting to settle the matter.

[9] On April 24, 2017, the ALJ issued an order setting a conference for May 3, 2017. In that order, the ALJ stated that "[a]fter inquiry" with both DCS and SPD "regarding [Eib]'s classification," DCS "felt a conference was necessary to further discuss these issues." *Id*. at 77. On the day of the scheduled conference, Eib filed a motion for summary judgment as well as a motion to find DCS in default, both of which were based on SPD's untimely response. He also filed a second motion for disqualification of the ALJ, adding as a reason for disqualification the ALJ's ex parte communications with DCS and SPD as referenced in the April 24 order. On May 5, 2017, the ALJ denied Eib's motion for summary judgment and motion for disqualification.

[10] On January 29, 2018, DCS filed a motion it titled as one for summary judgment regarding Eib's employment classification.[2] DCS asserted that Eib was an unclassified employee and that he had not provided any evidence to support his assertion that he was a classified employee. DCS maintained the SEAC did not have jurisdiction over Eib's complaint because as an unclassified employee Eib was required to allege that his dismissal was contrary to public policy, which he did not do. The same day, Eib filed a brief in support of his amended complaint in which he continued to assert that he was a classified employee.

[11] On February 9, 2018, the ALJ entered an order regarding Eib's employment classification. Specifically, the ALJ found that Eib had not provided any evidence to controvert DCS's determination that his position as a DCS staff attorney did not meet the requirements for classified service. The ALJ therefore concluded that Eib was an unclassified employee. In a footnote, the ALJ noted that Eib, as an unclassified employee, could still allege that his termination violated public policy. Eib filed a motion to correct error, arguing that the SEAC deprived him of an opportunity to respond to DCS's motion for summary judgment when it granted DCS's motion eleven days after it was filed. The ALJ denied Eib's motion to correct error, finding that, even though DCS titled its motion as one for summary judgment, such was merely a memorandum as to the issue of Eib's employment classification.

---

[2] In its brief, DCS noted that after several case management orders and a period of discovery, the ALJ instructed the parties to submit briefs regarding Eib's employment classification.

[12] On June 11, 2018, DCS filed a motion for summary judgment along with a designation of evidence and supporting brief. Eib filed a brief in opposition on July 12, 2018. On August 17, 2018, the SEAC granted DCS's motion for summary judgment. In the order, the ALJ retracted his previous conclusion that Eib fell within an exception to classified service and relied solely upon the lack of evidence that Eib was ever employed in classified service as the basis for the determination that Eib was an unclassified employee.

[13] On September 17, 2018, Eib filed a petition for judicial review. He filed his brief in support thereof on March 25, 2019. The SEAC and DCS filed a brief in opposition on May 9, 2019, and Eib filed his reply on May 29, 2019. The trial court held a hearing on July 12, 2019. On October 16, 2019, the trial court entered its order denying Eib's request for relief. Eib now appeals. Additional facts will be provided below as necessary.

## Discussion & Decision

[14] Eib appeals from the trial court's denial of his petition for judicial review of the SEAC's decision. Judicial review of an administrative decision is limited under the Administrative Orders and Procedures Act (AOPA). *Moriarity v. Ind. Dep't of Natural Res.*, 113 N.E.3d 614, 619 (Ind. 2019). We may set aside an agency action only if it is

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d). An action is arbitrary and capricious only where there is no reasonable basis for the action. *Ind. Dep't of Envtl. Mgmt. v. Boone County Res. Recovery Sys., Inc.*, 803 N.E.2d 267, 272 (Ind. Ct. App. 2004), *trans. denied*. The "burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity." Ind. Code § 4-21.5-5-14(a).

[15] "Our review of agency action is intentionally limited, as we recognize an agency has expertise in its field and the public relies on its authority to govern in that area." *Ind. Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017) (citation omitted). Although we "defer to the agency's findings if they are supported by substantial evidence[,]" we review an agency's conclusions of law de novo. *Moriarity*, 113 N.E.3d at 619. "An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000). Moreover, we do not reweigh the evidence; rather, we consider the record in the light most favorable to the agency's decision. *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 992 (Ind. 2014). We will affirm the agency's judgment unless it is clearly erroneous. *Id.*

## *Overview of Civil Service System*

[16]    We begin with an overview of Indiana's civil service system. Prior to July 2011, the Indiana State Personnel Act served as the framework for human resource management for state employees. *See* Ind. Code §§ 4-15-2-1 to 4-15-2-21 (repealed). Effective July 1, 2011, the Legislature replaced the Indiana State Personnel Act with the State Civil Service System under I.C. Chap. 4-15-2.2. The State Civil Service System is comprised of classified service and unclassified service.

[17]    A "classified employee" is defined as an employee who "(1) has been appointed to a position in the state classified service; (2) has completed the working test period under section 34 of this chapter; and (3) has been certified by the appointing authority for that classification of positions." I.C. § 4-15-2.2-4. The working test period involves a full performance appraisal of the employee's work. I.C. § 4-15-2.2-34(a). Generally, classified employees hold positions that have "a federal statutory or regulatory requirement for the establishment and maintenance of personnel standards on a merit basis." I.C. § 4-15-2.2-21(a) (listing eleven federal programs that require state employees implementing the programs to be employed on a merit basis). Classified employees can only be dismissed for just cause and are entitled to appeal their dismissal. I.C. § 4-15-2.2-23.

[18]    An unclassified employee is a state employee not in the state classified service. Unclassified service is separate from the state classified service and "[e]xcept as otherwise provided, "the human resource management systems applicable to

the state classified service do not apply to the unclassified service." I.C. § 4-15-2.2-22(c). Employee positions that are statutorily exempt from state classified service, include, among others, employees who hold executive level positions involving the development of policy goals or implementation of policy.[3] I.C. § 4-15-2.2-21(b)(3)(C). An unclassified employee is an employee at will and "may be dismissed, demoted, disciplined, or transferred for any reason that does not contravene public policy." I.C. § 4-15-2.2-24. Unclassified employees may only appeal a dismissal to the SEAC under the following conditions:

> An unclassified employee must establish that the [SEAC] has subject matter jurisdiction to hear the employee's wrongful discharge claim by establishing that a public policy exception to the employment at will doctrine was the reason for the employee's discharge. The former employee has the burden of proof on this issue.

I.C. § 4-15-2.2-42(f). A public policy exception to employment at will may be shown if the unclassified employee establishes that the reason for discharge is either that the employee was exercising a statutory right (such as filing a worker's compensation claim or refusing to commit an illegal act) or fulfilling a statutory duty (such as reporting for jury duty). *See Perkins v. Mem'l Hosp. of South Bend*, 141 N.E.3d 1231 (Ind. 2020).

---

[3] This is the exception to classified civil service that the ALJ initially relied upon in determining Eib was an unclassified employee.

[19]     The appeals process for classified and unclassified state employees consists of three steps. The complainant must first file an appeal of dismissal with the appointing authority—DCS in this case—and the appeal must be filed within thirty days of dismissal (Step I). I.C. § 4-15-2-2-42(c) and (e). The appointing authority has fifteen days to issue a decision. I.C. § 4-15-2.2-42(e). If not satisfied with the decision, the complainant can file an appeal with SPD within fifteen calendar days of the decision of the appointing authority, and the SPD has thirty calendar days to issue a decision (Step II). *Id*. If the SPD decision is adverse, the complainant can file an appeal with the SEAC (Step III), no later than fifteen calendar days after receiving SPD's decision.

### *1. Timeliness of SPD's Decision*

[20]     Eib first argues that SEAC erred in failing to recognize SPD's duty to timely respond to his appeal and imposing no consequences for the failure of SPD to do so. Specifically, Eib asserts that because SPD did not respond to his Step II appeal within thirty days, he was entitled to default judgment or summary judgment against DCS. SEAC acknowledges that SPD failed to timely issue its response, filing it five days after the thirty-calendar-day period expired, but nevertheless argues that such did not act to invalidate SPD's order or require entry of default or summary judgment in favor of Eib.

[21]     As noted above, I.C. § 4-15-2.2-42(e) provides that SPD "shall" issue a decision within thirty calendar days. In interpreting similar statutory deadlines, we have declined to find that the word "shall" is mandatory such that an agency loses jurisdiction over the case. In *State v. Langen*, 708 N.E.2d 617, 622 (Ind. Ct.

App. 1999), this court interpreted the sixty-day timeframe requirement to enter final orders under Ind. Code § 4-21.5-3-29(f),[4] holding that use of the term "shall" within the statute was directory rather than mandatory. The court determined that "[a]ll laws are mandatory in the sense that a duty of obedience is imposed, but it does not follow that every slight departure is fatal where the act is merely procedural and does not go to the merits." *Langen*, 708 N.E.2d at 622 (quoting *Allen Cnty. Dep't of Pub. Welfare v. Ball Mem'l Hosp. Ass'n*, 252 N.E.2d 424, 428 (Ind. 1969)). The test as to whether the requirement is essential is to consider the consequences of the failure to follow the statute and other possible interpretations. *Id*.

[22] The *Langen* court found it was "evident" from the statute that "no consequences attach in the event of an untimely order" and thus, "under no circumstances has the legislature deprived the Commission of its ultimate authority to issue its final order." *Id*. The court also noted that the purpose of the time period was to "promote the prompt and expeditious resolution of the administrative matters by the ultimate authority" and that it was "not intended as a jurisdictional prerequisite to a valid final order." *Id.*

[23] This court has since followed *Langen* in concluding that the Indiana Civil Rights Commission did not lose jurisdiction to issue a final order outside the statutory time frame. *See Roman Marblene Co., Inc. v. Baker*, 88 N.E.3d 1090 (Ind. Ct.

---

[4] Subsection (f) provides that the Indiana Real Estate Commission "shall" issue a final order disposing of a proceeding or remanding within sixty days of the latter of three specified occurrences.

App. 2017), *trans. denied*. In *Roman Marblene*, this court determined that "the legislature did not intend the prescribed time period to be essential to the validity of the ultimate authority's final order." *Id*. at 1098. The court understood the respondent company's frustrations with the agency's nearly five-month delay beyond the statutory time period in issuing its final order but nevertheless held that "the order issued is not void." *Id*.

[24] Relying on *Langen* and *Roman Marblene*, this court determined in *Ind. Behavioral Health & Human Servs. Licensing Bd. v. Thomas*, 108 N.E.3d 942, 944 (Ind. Ct. App. 2018), *trans. denied*, that the statutory period set forth in Ind. Code § 4-21.5-3-27(g), was directory rather than mandatory. The *Thomas* court concluded that the agency's order issued outside of the ninety-day statutory requirement was not void and thus, the trial court erred in vacating the agency's decision on such grounds. *Id*.

[25] Eib has provided no authority to support his position that SPD's failure to timely file its decision had dire consequences that should have resulted in him being granted relief as against DCS, and we find nothing in the statute setting out consequences that attach in the event an order is issued beyond the thirty-calendar-day period. With this in mind, and given the above caselaw, we conclude that the statutory period set out in I.C. § 4-15-2.2-42(e) is directory

rather than mandatory. The SEAC did not err in concluding that Eib was not entitled to judgment on account of SPD's delay in issuing its decision.[5]

## 2. Disqualification of ALJ

Eib argues that the SEAC erred in not disqualifying the ALJ who presided over this matter. Eib asserts that the ALJ should have been disqualified because he (1) made certain assumptions that favored DCS, (2) acted in a representative capacity by asserting a legal argument on behalf of DCS, and (3) engaged in communications with DCS and SPD outside of the proceedings. Eib maintains that the ALJ's actions met the standard for disqualification under AOPA in that they demonstrate prejudice and bias and constitute prohibited ex parte communication. *See* I.C. § 4-21.5-3-10(a)(1) (prejudice and bias); I.C. § 4-21.5-3-11(a)(1) (ex parte communication).

Members of the SEAC are required to "fairly and impartially" determine the validity of employee appeals. I.C. § 4-15-1.5-2. As adjudicators, they are entitled to a strong presumption that they are unbiased and unprejudiced. *See Moore v. Liggins*, 685 N.E.2d 57, 63 (Ind. Ct. App. 1997). To overcome this presumption, the party seeking to disqualify an adjudicator must establish actual personal bias. *Id*. "Merely asserting bias and prejudice does not make it

---

[5] Although we have concluded that Eib was not entitled to relief based on SPD's delay in issuing its decision, we cannot ignore the ALJ's comments in its order regarding this issue. As noted above, the ALJ stated in a footnote that "SPD only misses such deadlines when it is trying to settle such matters" and then "assume[d]" such to be the reason for the delay herein. *Id*. at 26. The ALJ's comments in this regard were wholly improper.

so." *In re Estate of Wheat*, 858 N.E.2d 175, 183 (Ind. Ct. App. 2006) (quoting *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002)); *see also New Trend Beauty Sch., Inc. v. Ind. State Bd. of Beauty Culturist Examiners*, 518 N.E.2d 1101, 1105 (Ind. Ct. App. 1988) (holding that in absence of a demonstration of actual bias, courts should not interfere in administrative process).

[28]  Eib complains that the ALJ improperly excused SPD's failure to timely issue a decision based on the ALJ's assumption that the parties were trying to settle the matter. Having concluded above that the statutory time period was directory rather than mandatory, there are no consequences for SPD's failure to meet the statutory deadline. Thus, the ALJ's assumed reason for the delay, although improper, is irrelevant because Eib was not entitled to relief based upon SPD's untimeliness in responding to his Step II appeal.

[29]  Eib claims the ALJ demonstrated bias by addressing a legal argument not presented by DCS. Specifically, he points to the ALJ's initial determination that Eib's position fell within an exception to classified employees listed in I.C. § 4-15-2.2-21(b). Ultimately, however, the ALJ switched course in its final order granting summary judgment in favor of DCS and concluded that Eib had not presented any evidence to controvert DCS's assertion that Eib was an unclassified employee, which DCS has maintained since the day it terminated Eib's employment. We fail to see how the ALJ's consideration of applicable law demonstrates bias.

[30]     Eib also claims the ALJ should have recused himself given his ex parte communication with DCS and SPD as to his employment classification. The reliance on ex parte communications is not allowed in administrative hearings of an adjudicative nature. *Parker v. Ind. State Fair Bd.*, 992 N.E.2d 969, 977 (Ind. Ct. App. 2013). Not all ex parte communications require disqualification, however. Here, it is clear that the ALJ engaged in improper ex parte communication with DCS and SPD, and the ALJ is admonished to avoid such ex parte communications in the future. Nevertheless, the record demonstrates that Eib was advised of such communication and was afforded an opportunity to be heard – and in fact was heard – on the matter of his classification, which was the subject of ex parte communication at issue. *Cf. Worman Enterprises, Inc. v. Boone Cnty. Waste Mgmt. Dist.*, 805 N.E.2d 369, 375 (Ind. 2004) (noting that due process may be denied if parties not given opportunity to be heard and comment on all evidence in a case). Eib does not explain how he was prejudiced by the alleged ex parte communication. Under these circumstances, the ALJ was not required to recuse himself.

[31]     Eib claims that the ALJ showed bias by copying nearly verbatim the reasoning as to the determination of his employment status as set forth in the notice of proposed dismissal and using its February 9, 2018 order determining that Eib was an unclassified employee. Eib asserts that this demonstrates that the ALJ's mind "was made up from the outset of these proceedings" and that he did not consider arguments Eib made following the notice of proposed dismissal. *Appellant's Brief* at 24. At all stages throughout the appeals process, the issue

and arguments presented by the parties have been whether Eib, as a DCS staff attorney, was employed in state classified service, thus entitling him to certain statutory rights. That the ALJ engaged in the same analysis as to this issue on two different occasions, albeit choosing to recite from its previous decision, does not indicate bias. *Cf. Cnty. of Lake v. Pahl*, 28 N.E.3d 1092, 1100 (Ind. Ct. App. 2015) (noting that it is not "per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party"), *trans. denied*. In any event, we note that the ALJ ultimately altered its analysis as to Eib's employment classification in its final order granting summary judgment for DCS. Eib presented no evidence of actual bias on behalf of the ALJ.

### 3. Unclassified Employee Determination

[32]    Finally, Eib argues that the ALJ erred in concluding that he was an unclassified employee. Eib's employment classification is the crux of these proceedings.

[33]    SPD informs state employees that "[a]ll employees not expressly placed in the classified service are in the unclassified service." *See* https://www.in.gov/spd/policies-and-procedures/laws-rules-and-policies/ (last visited September 3, 2020). This statement is consistent with I.C. § 4-15-2.2-21(a), which provides that classified positions are limited to programs that have a federal requirement for employment on a merit basis. There is no dispute that DCS has programs that may be connected to some of the identified federal programs. This does not, however, mean that all DCS employees are in positions that are classified. Indeed, to be considered an employee in classified

service, I.C. § 4-15-2.2-4 makes clear that the employee had to have (1) been appointed to a position in state classified service, (2) completed a working test period that involved a performance appraisal, and (3) been certified by the appointing authority for classified service.

[34] In his termination letter, DCS informed Eib that it considered him to be an unclassified employee. In his Step I appeal to DCS, Eib simply asserted his belief that his position fell within state classified service. In response, DCS responded that Eib's position as a staff attorney for DCS did not meet the requirements for classified service. Throughout these entire proceedings, Eib has merely claimed to be a classified employee, without ever providing evidence that he met the requirements of a classified employee. To be sure, he has not established that DCS appointed him to a position in classified service, that he completed a working test period that included a full performance appraisal, and that he was certified by DCS for classified service. *See* I.C. § 4-15-2.2-4.

[35] Contrary to Eib's argument, the SEAC did not improperly shift the burden to him by requiring that he produce such evidence to avoid entry of summary judgment. DCS, as the moving party, established that Eib was an employee in unclassified service and thus, not entitled to the due process he felt he was owed. The burden then shifted to Eib to establish that he was an employee

within classified service. As we noted above, Eib presented no such evidence.[6] We therefore conclude that the SEAC did not err in granting summary judgment in favor of DCS.

[36] As an employee in unclassified service, Eib was required to establish that the SEAC had subject matter jurisdiction to hear his wrongful discharge claim by establishing that he was terminated for reasons that contravene public policy. *See* I.C. § 4-15-2.2-42(f). The reason given by DCS for Eib's dismissal was inadequate work performance, which does not implicate public policy. Eib has made no claim that his dismissal was for any other reason. He only argues that he was denied due process because he was not afforded a pre-deprivation hearing that must be provided to employees in classified service. Eib did not meet his burden. The SEAC properly granted summary judgment in favor of DCS.

[37] Judgment affirmed.

Bailey, J. and Crone, J., concur.

---

[6] In his brief, Eib takes issue with the ALJ's initial reasons for determining that he was not a classified employee. In its first order on the issue of Eib's classification, the ALJ seemingly assumed Eib's position fell within classified service but then considered Eib's duties as a staff attorney for DCS and found that his position fell within an exception to such. In the final summary judgment order, however, the ALJ stated that there was no evidence to support its previous determination, but rather, the record demonstrated that Eib was never employed in classified service. Thus, we need not address Eib's many arguments as to why the ALJ's initial determination was in error.